J-S76035-16

2016 PA Super 309

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUCIANO MARTINEZ | |
| Appellant | No. 2118 EDA 2015 |

Appeal from the Judgment of Sentence June 29, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009700-2014

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED DECEMBER 29, 2016**

Luciano Martinez ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, which sitting as finder of fact in his waiver trial found him guilty of robbery, persons not to possess a firearm, carrying a firearm without a license, theft by unlawful taking, theft by receiving stolen property, possession of an instrument of crime, carrying a firearm on public streets of Philadelphia, simple assault, recklessly endangering another person, and terroristic threats.  Appellant contends that the Commonwealth introduced insufficient evidence to support his terroristic threats conviction and that the court imposed an illegal sentence by imposing separate sentences for the crimes of robbery,

_____

[*] Former Justice specially assigned to the Superior Court.

terroristic threats, simple assault, and recklessly endangering another person. We affirm in part and reverse in part.

The trial court aptly provides a pertinent factual history of the case as follows:

> On August 8, 2014, at approximately 8:55 p.m., complainant and his friend[, who were on their way home to Bucks County from a contracting job, decided to stop at a] pizza restaurant located at the corner of Orthodox and Torresdale Streets in Philadelphia, PA. N.T., 2/24/15 at 19. Because the restaurant did not have a public restroom, complainant left the pizza restaurant and walked across the street to find a private location to relieve himself. *Id.* at 20. Complainant stopped in an alley next to a corner store located at 2033 Orthodox Street…. *Id.* at 19, 44.
>
> Appellant approached complainant and asked [him] if he needed anything. *Id.* at 21. Complainant told appellant that he did not need anything from appellant and that he was in the alley "just looking for a place to go to the bathroom." *Id.* Appellant then asked complainant, "what do you got?" *Id.* at 22. Complainant told appellant that he "did not have anything." *Id.* At that moment, appellant pulled out a silver revolver and pressed it against complainant's cheek. *Id.* at 21-22. Appellant them slammed complainant against the hood of a nearby motor vehicle and rummaged through complainant's pockets. *Id.* at 22. Appellant took fifty dollars ($50) and a cellular phone from complainant and ran away. *Id.* at 22-23.

Trial Court Opinion, filed 2/10/16, at 3-4.

Later that evening, police arrested Appellant and found him in possession of complainant's cell phone during a search incident to arrest, but they found neither complainant's money nor a handgun on either his person or at his residence. *Id.* at 33, 35, 37, 86. A February 4, 2015, bench trial resulted in convictions on all counts relating to Appellant's attack of

complainant, and the court subsequently sentenced Appellant to a six to twelve year period of incarceration for robbery to which the following concurrent sentences were also imposed: four to eight years for possession of a firearm prohibited; two to four years for firearms not to be carried without license; nine to eighteen months for carrying firearms in public in Philadelphia; one to two years for possession of an instrument of crime; one to two years for terroristic threats; one to two years for simple assault; and one to two years for the reckless endangerment of another person. This timely appeal followed.

Appellant presents the following two questions for our review:

1. Was not the evidence insufficient to support appellant's conviction for terroristic threats where no verbal threats were uttered by appellant?

2. Did not the trial court err by imposing separate sentences for the crimes of robbery, terroristic threats, simple assault and recklessly endangering another person, where the latter three offenses each merged with robbery for purposes of sentencing, thereby resulting in an illegal sentence that must be vacated?

Appellant's brief at 3.

In his first issue, Appellant argues a conviction for terroristic threats may not be sustained solely on evidence that he uttered the question "what do you got?" moments before pointing a gun at complainant and robbing him. The statute requires the communication of a threat to commit a crime of violence with intent to terrorize, Appellant maintains, and the evidence at bar was devoid of any such communication. We disagree.

When presented with a challenge to the sufficiency of the evidence, this court's well-settled standard of review is as follows:

In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt.

*In re L.A.,* 853 A.2d 388, 391 (Pa.Super. 2004) (citation omitted).

The crime of terroristic threats is committed when a person "communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). An express or specific threat is not necessary to sustain a conviction for terroristic threats. *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa.Super. 2003). Consequently, "[i]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Sinnott*, 976 A.2d 1184, 1187-188 (Pa.Super. 2009) (quotations and citations omitted), *aff'd in part and rev'd in part*, 30 A.3d 1105 (Pa. 2011).

"[T]he harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security[,]" *In re B.R.,* 732 A.2d 633, 636 (Pa.Super. 1999). Nevertheless, whether the person threatened actually believes the threat will be carried out is irrelevant, as such a factor is not an element of the offense."

*Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa.Super. 2003) (citation omitted).

The complainant provided the following pertinent testimony about his encounter with Appellant:

> **PROSECUTOR:**     Approximately how far away was the defendant from you when you were having this conversation?
>
> **COMPLAINANT:**     No more than three feet.
>
> **Q:**   And you indicated that he came up and asked you what you needed?
>
> **A:**   Yes, ma'am.
>
> **Q:**   Did you know what he was talking about?
>
> **A:**   I had an idea of what he was talking about but it wasn't my purpose so I just said nothing.  I'm just looking for a place to go to the bathroom.
>
> **Q:**   And when you told him you were looking for a place to go to the bathroom, tell His Honor exactly what he did.
>
> **A:**   That's when he proceeded to say, [']what do you got[?'] and I said [']I don't have anything['] and he pulled a gun out and he had slammed me up against the hood of a green car and started rumbling through my pocket, trying to get what I had.
>
> ***
> **Q:**   And where was the gun in relation to you?
>
> **A:**   In my cheek – my right cheek.

N.T. 2/24/15, at 21-22, 23.

Here, it is reasonable to infer from the totality of circumstances that Appellant's question, posed in a dark alley to complainant after he had

- 5 -

already indicated he wished to be left alone, was intended both to serve notice that complainant would not be left alone and to place him in a resultant state of fear and submission. When complainant, instead, rebuffed him a second time, Appellant immediately acted on his implied threat of force by placing a gun against complainant's face to effectuate the robbery.[1] Accordingly, because evidence of Appellant's words and conduct established beyond a reasonable doubt a threat to commit a crime with the intent to terrorize his victim, we reject Appellant's challenge to the sufficiency of the evidence offered to prove terroristic threats were made.

In his remaining issue, Appellant argues that the imposition of separate sentences for the crimes of robbery, terroristic threats, simple assault, and recklessly endangering another person amounted to an illegal sentencing scheme, as the court was bound to merge the latter three crimes as lesser-included offenses of robbery. A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the

---

[1] It is of no moment that Appellant did not explicitly inform complainant of the nature of the crime he threatened to commit. The combination of Appellant's statements and actions taking place in a dark, secluded alley amounted to a threat to commit a crime of violence. *See Commonwealth v. Hudgens*, 582 A.2d 1352 (Pa.Super. 1990) (holding no need to inform victim of specific crime intended where nature of threat and surrounding circumstances allowed inference of threat to commit murder or aggravated assault); *Commonwealth v. White*, 335 A.2d 436 (Pa.Super. 1975) (holding threat to commit crime of rape proven by circumstances that defendant told victim he was "going to grab her" and proceeded to carry her to abandoned building, pinned her to wall, and lifted skirt before victim's cry for help prompted neighbor's assistance).

sentence.[2]  Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Quintua****,* 56 A.3d 399, 400 (Pa.Super. 2012).

Appellant was charged with and convicted of the following pertinent offenses under the Crimes Code:

**§ 3701. Robbery**

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:
...
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[;]

**§ 2706. Terroristic threats**

**(a)  Offense  defined.**—A  person  commits  the  crime  of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1)   commit  any  crime  of  violence  with  intent  to  terrorize another[;]

**§ 2705. Recklessly endangering another person.**

---

[2] We note that this issue is raised for the first time in Appellant's Brief, as Appellant did not include it in his  Pa.R.A.P.1925(b) Concise Statement of Errors Complained of on Appeal.  However, issues regarding the legality of a sentence are non-waivable. ***Commonwealth v. Dinoia****,* 801 A.2d 1254, 1257 (Pa.Super. 2002).  Accordingly, this Court may review Appellant's claim even though it has not been properly preserved.

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury[;] and

### § 2701. Simple Assault

**(a)** **Offense defined.** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another.

18 Pa.C.S.A. §§ 3701(a)(1)(ii), 2706(a)(1), 2705, and 2701(a)(1).

Whether these offenses merge turns on Section 9765 of our Sentencing Code, which provides:

### § 9765.  Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

"The statute's mandate is clear.  It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).  ***Accord Commonwealth v. Wade***, 33 A.3d 108 (Pa.Super. 2011) (holding Section 9765 prohibits merger of sentences unless strict two-part test met).

When considering whether there is a single criminal act or multiple criminal acts, the question is not "whether there was a

'break in the chain' of criminal activity." The issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes."

***Commonwealth v. Pettersen***, 49 A.3d 903, 912 (Pa.Super. 2012).

In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth. ***Commonwealth v. Jenkins***, 96 A.3d 1055, 1060 (Pa.Super. 2014) (holding, consistent with our Supreme Court's jurisprudence, "We must determine whether [defendant's] actions . . . constituted a single criminal act, with reference to elements of the crime as charged by the Commonwealth.") (internal quotation marks and citation omitted).

In ***Jenkins***, a three-judge panel agreed[3] that merger of robbery[4] and simple assault convictions was not applicable to the otherwise lesser and greater-included offenses[5] as charged in that case where the charging

---

[3] Though not joining the majority decision, Judge Strassburger concurred that the "convictions do not merge for sentencing purposes because they are not predicated upon 'a single criminal act.' 42 Pa.C.S. § 9765." ***Id.*** at 1064.

[4] The defendant in ***Jenkins*** was charged with robbery at 18 Pa.C.S. § 3701(a)(1)(iv), which proscribes inflicting bodily injury upon another or threatening another with or intentionally putting him in fear of immediate bodily injury during the course of a theft.

[5] The panel agreed that, "[w]ere it the case that Jenkins' [sic] had been convicted of both simple assault and robbery upon the basis of a single
*(Footnote Continued Next Page)*

documents and the victim's testimony listed an act in support of the robbery that was not included among the acts forming the basis for simple assault. Specifically, the bodily injury elements to both the robbery and simple assault charges were based on initial blows to the victim's face that put him to the ground. Only the robbery charge, however, was supported by additional evidence that defendant then placed his boot on the prostrate victim's face to restrain him, an act which the victim testified was both frightful and painful.

The panel observed that the events listed in the information and described by the victim at trial would, therefore, establish the bodily injury element of robbery without regard to the facts that supported the charge of simple assault. The panel reasoned:

> "Had the Commonwealth listed only the assaultive conduct that formed the basis of the simple assault charge against Jenkins at the robbery charge, we would conclude that Jenkins did not commit "multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime.
>
> ***
> However, the Commonwealth's description of the conduct forming the basis of the robbery charge against Jenkins also included the Defendants' conduct in restraining Caracillo on the ground. Caracillo's testimony indicates that the Defendants restrained him by holding a foot to his head in a manner that exacerbated his existent facial injuries. N.T. at 100. This additional physical restraint caused Caracillo substantial pain. *Id.* These events would establish the "bodily injury" element of

*(Footnote Continued)* ───────────

criminal act, we would likely order Jenkins' resentencing because simple assault appears to be a lesser included offense of robbery." *Id.* at 1062

robbery, even in the absence of the facts that established Jenkins' conviction for simple assault.

*Id.* at 1062. Accordingly, the panel concluded that the crimes were the result of multiple criminal acts precluding merger of the convictions for purposes of sentencing.

Our recent decision in **Commonwealth v. Kimmel**, 125 A.3d 1272 (Pa.Super. (2015)) (*en banc*), concluded that the dictates of **Jenkins** were satisfied where the criminal complaint and information set forth generic charges of DUI and felony fleeing, while the affidavit of probable cause supplied the factual narrative of Appellant's DUI stop and subsequent flight-by-vehicle from the scene of the stop. **Id.** at 1276-77. Viewing these documents as a whole and understanding them to delineate separate criminal acts, which were later reflected in the trial testimony, **see Id.** at 1276, the majority held that the Commonwealth established the factual predicates to avoid merger pursuant to **Jenkins**.[6]

_____

[6] Concurring in the result, Judge Olson departed from the majority's reasoning that other records could supply the factual account necessary to discern that charges were based on separate criminal acts:

> The information charged generically that [defendant] committed DUI and fleeing, without specifying when the crimes occurred. However, it is clear that Appellant's post-stop actions constituted both a DUI (because Appellant operated his vehicle while intoxicated) and fleeing (because Appellant departed from a signaled police detention). Because of the generic nature of the allegations set forth in the information, I cannot say with certainty, as this Court could in **Jenkins**, that there were two separate criminal acts.

*(Footnote Continued Next Page)*

Applying pertinent authority to the present matter, it is apparent from the criminal information, complaint, and affidavit of probable cause that the Commonwealth did not allege criminal acts that constituted terroristic threats as distinct or delineated from the conduct that constituted robbery. Indeed, the information offers only a generic recitation of the offenses and the statutory elements of each, while the factual accounts in both the complaint and the affidavit of probable cause describe Appellant's "approach" of the complainant and robbery by gunpoint in the next moment as a seamless event occurring in the course of a theft.

Unlike in *Jenkins* and *Kimmel*, therefore, neither the charging information nor supporting documents of record describe the operative facts in such a way as to distinguish the specific conduct underlying the offenses of robbery and terroristic threats, respectively. We may not conclude, therefore, that the offenses were based on two discrete criminal acts for

*(Footnote Continued)* _____

> In reviewing the information in this case, the total lack of facts prevents me from concluding that Appellant was charged with a DUI, followed by a stop, followed by a charge for fleeing while DUI. Nor can I say with certainty that the jury necessarily found this version of the events proven beyond a reasonable doubt. In the absence of precise allegations (similar to those in Jenkins) asserting that Appellant's DUI offense arose from his pre-stop operation of a motor vehicle, it is just as conceivable that the Commonwealth charged Appellant with DUI, and fleeing while DUI, based entirely on his conduct following the traffic stop by [the police officer].

*Id.* at 1280, 1281 (Olson, J. concurring).

purposes of avoiding merger at sentencing. *Compare Commonwealth v. Melvin*, 548 A.2d 275, 280–281 (Pa.Super. 1988) (terroristic threats did not merge with robbery where, after defendant completed robbery, he ordered people remaining in store to get into back room or he would shoot them. "Although the terroristic threat and the robbery occurred during the same episode, each act was a separate and distinct injury....").

We must, then, turn to the second part of the Section 9765 test and examine whether all of the statutory elements of terroristic threats as charged are subsumed by the statutory elements of robbery. We find that they are.

Specifically, the relevant elements of terroristic threats comprise the communication of a threat to commit a crime of violence with the intent to cause terror. Robbery, as charged in this case, requires threatening serious bodily injury or intending to place a victim in fear of serious bodily injury. Though the two statutes do not employ identical words, it would be championing a distinction without a difference to conclude that threatening serious bodily injury or intending to cause fear of serious bodily injury was not the functional equivalent of a threat of violence intended to cause terror. Particularly where, as here, both offenses arose from the same act, we do not discern from these statutes the legislative intent to permit separate sentences. We must, therefore, reverse judgment of sentence in this respect, as Appellant's terroristic threats and robbery convictions merged for purposes of sentencing.

In reviewing whether Appellant's conviction for REAP merges with his conviction for robbery, however, a comparison of the respective statutes leads to the conclusion that each offense requires proof of an element that the other does not, and, therefore, cannot merge for sentencing purposes. Indeed, among the elements of REAP is the requirement that the defendant possessed the "actual present ability to inflict harm." **See Reynolds**, **supra** at 727-28. This evidentiary burden exceeds that required for robbery under Section 3701(a)(1)(ii), which only requires proof that the defendant threatened another with, or intentionally placed a person in fear of, immediate serious bodily injury whether or not the ability to cause such injury was actual. Moreover, REAP does not concern itself with the victim's state of mind, while robbery under Section 3701(a)(1)(ii) requires proof that the victim was placed in fear of serious bodily injury. Appellant's merger argument with respect to REAP and robbery is, therefore, unavailing.

Appellant's conviction for simple assault, likewise, does not merge with his Section 3701(a)(1)(ii) robbery conviction when comparing the two statutes under a Section 9765 analysis. Appellant's simple assault conviction required evidence that he caused or attempted to cause complainant bodily injury, while his robbery conviction required no proof of injury or attempted injury but only that he threatened complainant with or intentionally placed him in fear of serious bodily injury. Conversely, robbery required proof that the proscribed conduct occurred during the course of a theft, while simple assault required no such proof. Between Appellant's

robbery and simple assault convictions, where all statutory elements of one conviction were not contained within the statutory elements of the other, the trial court properly declined to merge the convictions for purposes of sentencing.

Accordingly, we reverse the judgment of sentence for terroristic threats at count nine, as it merges with robbery at count one. We need not remand for re-sentencing, however, as we have not upset the sentencing scheme consisting entirely of concurrent sentences. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa.Super. 2006) (holding if appellate court can vacate illegal sentence without upsetting the trial court's overall sentencing scheme, it need not remand for resentencing); *Commonwealth v. Klein*, 795 A.2d 424, 430-31 (Pa.Super. 2002) (holding "where a case requires a correction of sentence, this [C]ourt has the option of either remanding for resentencing or amending the sentence directly."). The judgment of sentence as corrected in this opinion is affirmed in all other respects.

Convictions affirmed. Judgment of sentence affirmed in part and reversed in part. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2016

- 15 -