J-S46009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3420 EDA 2018 |

Appeal from the Order Entered October 15, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-JV-0000345-2018

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.:                **FILED DECEMBER 20, 2019**

G.S., a minor,[1] appeals from the October 15, 2018 adjudicatory/dispositional hearing order entered in the Court of Common Pleas of Delaware County, which adjudicated him as delinquent on the charge of terroristic threats. **See** 18 Pa.C.S.A. § 2706(a)(1). G.S. challenges the sufficiency of the evidence utilized in the juvenile court's finding of delinquency. After thorough review, we agree and reverse.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] G.S. reached the age of majority on September 11, 2019. However, for consistency sake, we identify him in accordance with the case's caption.

On April 1, 2018, a Sunday, G.S., while in New Jersey, posted an image to his Snapchat[2] account containing a song lyric from the song *Snap* by the band Spite without attribution or quotation marks:

> Everyone, I despise everyone! Fuck you, eat shit, blackout, the world is a graveyard! All of you, I will fucking kill off all of you! This is me, this is my, snap!

No other text was contained in the image.

The Commonwealth did not present the testimony of anyone who was an original, intended recipient of the Snapchat image. Instead, the primary witness at trial was the mother of a student who attended the same school as G.S. When questioned on how her son became aware of the Snapchat image, she indicated that she did not believe her son received the image directly from G.S. and that a third party had forwarded it to her son.

The mother testified that the image upset her greatly and led her to refer the matter to the Pennsylvania State Police. Shortly thereafter, officials at G.S.'s high school and the State Police were contacted by dozens of concerned individuals. Many of these communications inquired as to whether it was safe for children to attend G.S.'s school the following day.

---

[2] For purposes of context, we note that "Snapchat is a social media platform where users share photographs and messages; a Snapchat story is a series of photos a user posts—each photo is available for twenty-four hours only." ***Goldman v. Breitbart News Network, LLC***, 302 F.Supp.3d 585, 587 n.1 (S.D.N.Y. 2018). However, the juvenile court found that the evidence presented at trial was insufficient to establish "the precise nature of this social media outlet, especially the settings that might have influenced the extent of the publication [of G.S.'s post.]" Trial Court Opinion, 1/15/19, at 2 n.4.

Later that same Sunday, the Pennsylvania State Police interviewed G.S., finding G.S. to be forthcoming and believable and the content of answers to be truthful. However, G.S. was still taken into custody, and the Commonwealth charged G.S. with terroristic threats pursuant to 18 Pa.C.S.A. § 2706(a)(1).

The following day, April 2, 2018, the Pennsylvania State Police provided a visible safety-related presence at G.S.'s high school, but attendance figures suffered, with some 360 students being absent or tardy from school.

Ultimately, after hearing testimony and having several of G.S.'s psychological evaluations at its disposal, the trial court concluded that G.S. required treatment, rehabilitation, or supervision and adjudicated him delinquent. G.S. did not testify during the adjudication hearing. **See** Trial Court Opinion, 1/15/19, at 2-4.

G.S. filed a timely appeal, and while the trial court issued an opinion pursuant to Pa.R.A.P. 1925, it did not require G.S. to identify the issues he sought to raise on appeal.

In this appeal, G.S. raises two issues for our review: (1) Whether the evidence was sufficient to establish beyond a reasonable doubt that G.S. intended to terrorize another, in accordance with 18 Pa.C.S.A. § 2706(a)(1); and (2) whether G.S. was inappropriately adjudicated delinquent under 18 Pa.C.S.A. § 2706(a)(3) when there is no mention of this subsection in his juvenile petition. **See** Appellant's Brief, at 5.

Our review of a sufficiency challenge to an adjudication of delinquency is well-settled:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–349 (Pa. Super. 2013) (citation omitted).

A determination of evidentiary sufficiency is a question of law, and therefore, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Woodard*, 129 A.3d 480, 489 (Pa. 2015).

We must address G.S.'s second issue first, as it concerns the scope of our review. G.S. argues that the juvenile court improperly adjudicated him delinquent under 18 Pa.C.S.A. § 2706(a)(3). A review of the juvenile petition filed against G.S. reveals that he was charged only with violating 18 Pa.C.S.A. § 2706(a)(1). Further, the record does not contain any request by the

- 4 -

Commonwealth to amend the petition before, during, or after trial. Indeed, the Commonwealth concedes on appeal that it did not charge G.S. under subsection (a)(3) and did not amend the petition.

The Commonwealth contends, in contrast, that: (1) the juvenile court did not adjudicate G.S. delinquent pursuant to subsection (a)(3); and (2) the juvenile court's discussion of subsection (a)(3) did not influence the court's decision to adjudicate G.S. delinquent. After reviewing the record, we agree with the Commonwealth that G.S. was not adjudicated delinquent under (a)(3). **See** Adjudicatory/Dispositional Hearing Order, 10/15/18, Exhibit A (identifying subsection (a)(1) as the statutory basis of the adjudication of delinquency). However, we cannot agree that the court's consideration of subsection (a)(3) did not improperly influence the court's adjudication of delinquency. To see why, we must proceed to address G.S.'s first issue, challenging the sufficiency of the evidence under subsection (a)(1).

Under subsection (a)(1), "a person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." Importantly, subsection (a)(1) requires, as an element of the offense, an individual to act "with a subjective intent to terrorize or intimidate." **Commonwealth v. Knox**, 190 A.3d 1146, 1158 (Pa. 2017). G.S. contends the evidence presented by the Commonwealth was insufficient to establish that he intended to terrorize anyone when he posted the song lyrics to Snapchat.

We have stated that "[a]n express or specific threat is not necessary to sustain a conviction for terroristic threats." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016) (citation omitted). Moreover, "the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security[.]" ***Id***., at 1029 (citation omitted). "Nevertheless, whether the person threatened actually believes the threat will be carried out is irrelevant, as such a factor is not an element of the offense." ***Id***. (citation omitted).

Here, the juvenile court began its discussion of the sufficiency of the evidence by noting that "when juxtaposed with the evidence presented, it is clear that only subsections (1) *and* (3) reasonably apply." Trial Court Opinion, 1/15/19, at 5. Further, the juvenile court performed its analysis of G.S.'s challenge to the sufficiency of the evidence "under both subsection (1) and (3)." ***Id***. at 7.

This finding is not an inconsequential observation: under subsection (a)(3), the Commonwealth need only prove a "reckless disregard of the risk of causing such terror or inconvenience," as opposed to the burden of proving an intent to terrorize under (a)(1). As a result, the juvenile court's reference to subsection (a)(3) allowed for an adjudication of delinquency based on a finding of recklessness. In contrast, a finding of recklessness would not support an adjudication of delinquency under subsection (a)(1).

As noted, the record reveals, and the Commonwealth concedes, G.S. was not charged with or adjudicated delinquent under subsection (a)(3). Since

G.S. was not adjudicated delinquent under subsection (a)(3), we must exclude any of the trial court's findings that relate to a reckless state of mind. For example, the court's discussion of "objective recklessness in publishing" the lyrics in a Snapchat image, Trial Court Opinion, 1/15/19, is not relevant under subsection (a)(1).

Significantly, the juvenile court did make several findings regarding intent. First, the court found that the Commonwealth did not present any evidence to establish that the Snapchat posting was "a threat to the school or that it was somehow intended to cause the evacuation of the school facility." *Id*. at 5. The court then pivoted to examining culpability under the recklessness standard of subsection (a)(3) before returning to the issue of whether the evidence was sufficient to support a finding of an intent to terrorize. However, the only circumstance considered by the court in this part of its analysis is the express language of the lyrics. *See id*. at 7-8.

While the court was considering its verdict, the Supreme Court of Pennsylvania published *Knox*. The *Knox* case also concerned the publication of violent and explicit song lyrics. There, the appellant and his co-defendant had previously been arrested for a multitude of crimes arising from a routine traffic stop initiated by Officer Michael Kosko, who was assisted by Detective Daniel Zeltner. *See Knox*, 190 A.3d at 1148-49. Among the charged crimes was possession of a loaded stolen firearm. *See id*.

While these charges were pending, the appellant and his co-defendant wrote and recorded a song entitled "F—k the Police." *See id*. at 1149. The

lyrics of the song expressed a hatred of police officers and described the murder of police informants and police officers. ***See id***.

Further, the lyrics of the song identified Kosko and Zeltner by name and implied knowledge of when Kosko and Zeltner ended their shifts and that murders might occur in their homes. ***See id***. A recording of the appellant and his co-defendant performing the song was uploaded to YouTube by a third party, which was linked on a publicly accessible Facebook page that trial evidence "strongly suggested" belonged to the co-defendant. ***Id***.

The appellant was convicted of terroristic threats under subsection (a)(1). Our Supreme Court indicated that "an objective, reasonable-listener standard … is no longer viable for purposes of a criminal prosecution pursuant to a general anti-threat enactment." ***Id***., at 1156-57. It also concluded that sub-section (a)(1) was a general anti-threat statute. ***See id***., at 1157, n.9. In so concluding, the Supreme Court established that a "totality of the circumstances" test was the appropriate basis to ascertain intent and stated that "in evaluating whether the speaker acted with an intent to terrorize or intimidate, evidentiary weight should be given to contextual circumstances[.]" ***Id***, at 1158. Specifically, in accordance with the First Amendment, there must be "an inquiry into the speaker's mental state." ***Id***. In addition, our Supreme Court employed factors such as "whether the threat was conditional, whether it was communicated directly to the victim, whether the victim had reason to believe the speaker had a propensity to engage in violence, and how the listeners reacted to the speech." ***Id***., at 1159.

The Supreme Court concluded that the lyrics at issue in **Knox** were not "meant to be understood as an artistic expression of frustration," but were instead "both threatening and highly personalized to the victims." **Id**., at 1159. The lyrics described "in graphic terms how [the appellant] intends to kill those [police] officers." **Id**. In using a factor-based approach to conclude that there was sufficient evidence at the trial court to establish intent, the Supreme Court determined the most salient factor was the "*calling out by name* of two officers involved in [a]ppellant's criminal cases who were scheduled to testify against him, and the clear expression repeated in various ways that these officers are being *selectively targeted* in response to prior interactions with [a]ppellant[.] **Id**., at 1160-61 (emphases added).

Here, the only circumstance explicitly considered by the juvenile court was "the threat of death combined with the express verbiage, 'This me, this is my, snap!'" Trial Court Opinion, 1/15/19, at 7. The court did not consider whether the threat of death was conditional, whether it was communicated directly to the victim, whether the victim had reason to believe the speaker had a propensity to engage in violence, and how the listeners reacted to the speech. In fact, as the court noted, the Commonwealth failed to present any evidence regarding G.S.'s intended audience for the Snapchat post. Nor did the Commonwealth present any testimony from the direct recipient(s) of the Snapchat post.

As a result, the evidence here is easily distinguishable from the evidence found sufficient in **Knox**. First, G.S. was not the author of the lyrics that he

posted, but was republishing already established song lyrics. Second, the lyrics at issue did not mention any person or group of people by name, but merely referred to "everyone," thereby providing no basis for an inference that he was selectively targeting *any* person or group. Third, aside from debunked rumors, *see* Trial Court Opinion, 1/15/19 at 4, 9-10 (stating that the "hit list" incident "was a fabrication by another student and that G.S. did not engage in any act that created a suggestion or risk of harm"),[3] there is nothing in the record to support a finding that those observing G.S.'s Snapchat post had reason to believe he might engage in violence.[4] Fourth, the Commonwealth failed to present any evidence from a person who was a direct

_____

[3] The mother who was the Commonwealth's primary witness testified that the fear created by G.S.'s Snapchat post was influenced by her knowledge of a prior incident that she believed had led to the expulsion of G.S. from the district. *See* N.T., 8/16/18, at 9. The principal of the school testified that the incident the mother testified about arose from a report that G.S. had a "kill list." *Id*. at 91. However, the principal did not have any direct knowledge of that incident; he only knew what others had told him about it. *See id*. at 91-92. G.S.'s father testified that he had provided the school district with written admissions from the students involved that they had made up the story about G.S.'s "kill list" in order to get G.S. in trouble. *See id*. at 108. G.S. was not expelled due to the allegations, and the Commonwealth never pressed charges. *See id*. at 109.

[4] Interestingly, G.S. moved to have his psychological evaluation made part of the record for the court to consider in the adjudicatory phase. *See* N.T., 8/16/18, at 116-117. The Commonwealth did not object. *See id*. at 117. This report contains a significant amount of evidence regarding G.S. and the circumstances surrounding the Snapchat post at issue. It also contains an opinion on whether G.S. had the requisite intent to terrorize. While the court properly ignored the report's opinion regarding the ultimate fact at issue, we note that the court also did not explicitly consider any of the report's evidence concerning the circumstances of the Snapchat post.

recipient of G.S.'s Snapchat post. Finally, the Commonwealth failed to present any evidence of the Snapchat settings utilized by G.S. when he posted the image of the lyrics.

The Commonwealth suggests that if G.S. would have "post[ed] the lyrics in a fashion that made it clear that he was merely republishing a song lyric which he liked," Appellee's Brief, at 15, the outcome could have been different. The Commonwealth asserts that G.S.'s Snapchat post, by its very nature, "plainly expressed an intent to commit crimes of violence." *Id*. Further, G.S. conveyed "the threatening message in a fashion guaranteed to be taken seriously as a threat by those who saw it[.]" *Id*. The Commonwealth does not cite to anything in the record to demonstrate intent to terrorize other than the Snapchat post itself. The Commonwealth fails to identify evidence of record to support its assertion that G.S.'s allegedly knew that "those who saw [the post] were people [G.S.] associated with, including fellow high school students and their families." *Id*. However, as noted previously, the trial court found, and our review of the record confirms, that the Commonwealth failed to present any evidence capable of establishing G.S.'s intended audience. The Commonwealth also failed to present any testimony from a person who was part of G.S.'s intended audience regarding their reaction to seeing the song lyrics.

There was no evidence capable of establishing who G.S. intended to see the lyrics. Nor was there evidence capable of establishing that G.S. should have known the Snapchat image would be distributed beyond his intended

audience. Even viewing all of the evidence in the light most favorable to the Commonwealth, including all reasonable inferences gleaned therefrom, we find no basis to conclude that G.S. had the requisite intent to terrorize another.

However, nothing in this memorandum should be construed as criticizing the investigation here. The Snapchat post, when viewed by the parents of fellow students, school officials, and the state police, justified the investigation. We confine our analysis solely to the question presented on appeal: whether the evidence of record is legally sufficient to support the adjudication for terroristic threats.

Adjudication of delinquency reversed. Jurisdiction relinquished.

Judge Olson joins in the memorandum.

Judge Colins notes dissent.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/19