J-A01020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                 :          PENNSYLVANIA
                                                 :

             v.                                  :
                                               :

JABLAIR ALSBROOKS                 :
                                               :

           Appellant             :     No. 149 EDA 2019

Appeal from the Judgment of Sentence Entered November 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006471-2017

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:         **FILED FEBRUARY 06, 2020**

Jablair Alsbrooks (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of terroristic threats and conspiracy.[1] After careful review, we affirm.

Appellant appeared for a bench trial on November 27, 2018. The trial court summarized the evidence presented as follows:

> On May 30, 2017, the complainant in this case, Windell Saunders, appeared in court prepared to testify as a Commonwealth witness at [Appellant's] preliminary hearing in an underlying aggravated assault case; MC-51-CR-0013465-2017. Saunders was originally charged as a co-defendant in that matter, but agreed to testify against [Appellant] in exchange for a withdrawal of the charges against him. Before Saunders could testify, the matter was continued. Upon leaving the courtroom, Saunders waited for the elevator with his mother, Veronica

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706 and 903.

Saunders, where they encountered [Appellant] and his paramour. Upon seeing [Appellant], Saunders pointed him out to his mother. [Appellant] and his paramour approached Saunders, and [Appellant] shouted, "I can't believe you showed up. I'm going to [fucking] kill you. This is all your fault. You [fucking] fagot [*sic*]." His paramour told Saunders, "this is all your fault."

After [Appellant] and his paramour approached Saunders, his mother began to respond to the comments. [Appellant] and his paramour started to walk away after the verbal argument but the paramour came back and continued shouting at [Appellant's] mother. [Appellant] grabbed her by the arm and they walked away. Saunders immediately reported the incident to Detective Sweeney of the Philadelphia Police Department. After speaking with Detective Sweeney at the Stout Criminal Justice Center, Saunders and his mother went to the Philadelphia Police Department's 35th District and provided statements. The incident was also caught on video surveillance. ***See*** Commonwealth Exhibit C-1.

Saunders moved to a new neighborhood after this incident because he feared retaliation since he lived right next door to the Chinese store where the underlying incident occurred and he believed [Appellant] knew where he lived. Saunders told [the trial] court that he felt that if [Appellant] could kill him, he would because of Saunders' testimony in court on the underlying case.

During his testimony, [Appellant] denied threatening to kill Saunders. [Appellant] also testified that he did not know where Saunders lived and he never saw him in the neighborhood prior to the incident.

Trial Court Opinion, 3/11/19, at 2-3 (footnotes omitted).

The trial court rendered its verdicts finding Appellant guilty of terroristic threats and conspiracy at the conclusion of trial on November 27, 2018. That same day, the court sentenced Appellant to time-served to 23 months in prison, followed by five years of probation. On December 7, 2018, Appellant filed a post-sentence motion in which he challenged the sufficiency and weight

of the evidence. The trial court denied the motion on December 13, 2018.

Appellant filed this timely appeal.[2]

Appellant presents four issues for review:

(1) Did the lower court err when it allowed the complaining witness to testify as to language used by the alleged co-conspirator?

(2) Was the evidence insufficient to convict Appellant of conspiracy, where there was no evidence that [A]ppellant agreed to
commit a crime with another person?

(3) Was the evidence insufficient to convict Appellant of terroristic threats, where video evidence showed that Appellant did not initiate any conversation and did not threaten complainant?

(4) Was the conviction against the weight of the evidence where video evidence showed that the complainant initiated the verbal exchange and Appellant walked away?

Appellant's Brief at 5-6.

In the argument section of his brief, Appellant reorders his issues, and begins with his contention that the evidence was insufficient to support his convictions of terroristic threats and conspiracy. He then argues his first issue, that the court erroneously allowed Mr. Saunders to testify to hearsay

---

[2] Although the docket indicates the appeal was filed on Monday, January 14, 2019, the trial court accurately observed that the docket was "incorrect" and the appeal is timely. *See* Trial Court Opinion, 3/11/19, at 1 n.1. Our review of the record confirms that Appellant's notice of appeal is timely because it was scanned into the record on "1/10/2019 02:03:34 PM." *See* Pa.R.Crim.P. 720(a)(2) (notice of appeal shall be filed within 30 days of the entry of the order deciding a timely post-sentence motion).

statements from Appellant's paramour "because there was no conspiracy . . . and the Commonwealth did not attempt to prove there was a conspiracy before asking the statement be admitted." Appellant's Brief at 17.

Unlike Appellant, we find that the evidence supported the trial court's finding of conspiracy, and begin our analysis with Appellant's issue regarding the admissibility of Mr. Saunders' testimony about hearsay statements made by Appellant's girlfriend. Appellant argues that the court erred in overruling his objection and allowing the testimony because it was inadmissible hearsay. *See* Appellant's Brief at 17-19. Our Supreme Court has recognized a trial court's "discretionary decision making authority as concerns matters connected with the admission of evidence" alleged to be hearsay. ***Commonwealth v. Johnson***, 838 A.2d 663, 673 (Pa. 2003). Here, Appellant claims the trial court erroneously allowed Mr. Saunders to testify as follows:

> [Appellant's girlfriend] was saying basically the same thing he said. Like, she followed behind him, this is all your fault. We wouldn't be here, if this wasn't for you. You effing fagot.

N.T., 11/27/18, at 18.

The Commonwealth argues that the above testimony was not hearsay because the statements were not offered for their truth – whether it was Mr. Saunders' fault they were in court and Mr. Saunders' sexual orientation. *See* Commonwealth Brief at 12. Rather, the testimony was offered to show Appellant's shared intent to terrorize Mr. Saunders and prove conspiracy. The trial court determined that the testimony about the girlfriend's statements was

admissible because the statements "were made . . . in furtherance of the conspiracy." Trial Court Opinion, 3/11/19, at 6.

The relevant rule of evidence provides for an exception to the hearsay rule when the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Pa.R.E. 803(25)(E). We have explained: "only slight evidence of the conspiracy is needed for a coconspirator's statement to be introduced and the order of proof is discretionary. A co-conspirator's statement is only inadmissible where it is the sole evidence of the conspiracy." *Commonwealth v. Feliciano*, 67 A.3d 19, 27 (Pa. Super. 2013) (*en banc*). "A conspiracy, for purposes of this exception, may be inferentially established by showing the relation, conduct or circumstances of the parties." *Commonwealth v. Basile*, 458 A.2d 587, 590 (Pa. Super. 1983).

Contrary to Appellant's claim that "the Commonwealth relied entirely on the charge of conspiracy as evidence of the conspiracy," and "the only evidence of the conspiracy was the contested statement," Appellant's Brief at 19, our review reveals the "slight evidence" referenced in *Feliciano*, *supra*. Mr. Saunders testified that on May 30, 2017, he went to court to testify against Appellant in a separate case, and as he was leaving, encountered Appellant, who came to court with his girlfriend. N.T., 11/27/18, at 14-15. Mr. Saunders' testimony indicates that Appellant spoke first:

COMMONWEALTH:     Let's break that down.  You're saying "they." Who did what?

MR. SAUNDERS:     [Appellant] looked back at me and he basically said I can't believe you showed up.  You effing fagot.  I'm going to effing kill.  And the girlfriend – I meant the girl, she just tried to cosign what he just said –

THE COURT:     Hold on.  You can't say cosign.  That is interesting because it means someone wrote something down.  Did they say anything?

MR. SAUNDERS:     She was saying basically the same thing he said. Like, she followed him behind him, this is all your fault.  We wouldn't be here, if this wasn't for you.  You effing fagot.

THE COURT:     Okay.  So they called you names?

MR. SAUNDERS:     Yes.

THE COURT:     He's the one that threatened to kill you?

MR. SAUNDERS:     Yes.

N.T., 11/27/18, at 18-19.

"Generally, it has been held that, in order to satisfy the in-furtherance-of requirement of the coconspirator hearsay exception, it is sufficient for the government to establish an intent to promote the conspiratorial objective." *Commonwealth v. Johnson*, 838 A.2d 663, 675 (Pa. 2003).  Reading *Feliciano* together with *Johnson*, we conclude that the trial court did not abuse its discretion in allowing Mr. Saunders to testify about the statements made by Appellant's girlfriend, where Appellant, as a criminal defendant in a case in which Mr. Saunders was a witness, appeared at court with his

girlfriend, and made verbal threats to Mr. Saunders that were echoed by Appellant's girlfriend. We thus turn to Appellant's sufficiency claims.

In his second and third issues, Appellant assails the sufficiency of the evidence as it pertains to Appellant's convictions of conspiracy and terroristic threats. Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

With regard to conspiracy:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. C.S.A. § 903.

As the trial court observed, "[a]n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Trial Court Opinion, 3/11/19, at 4 (citing Commonwealth v. Chambers, 188 A.3d 400, 410 (Pa. 2018). A conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed. *Id.* The trial court astutely summarized:

> [Appellant] immediately started screaming at Saunders when he got off the elevator, and threatened to kill him. His paramour quickly joined in, yelling, "[T]his is all your fault. We wouldn't be here if it wasn't for you. You effing fagot [*sic*]." N.T., 11/27/18, at 18. [Appellant] and his paramour acted together to threaten Saunders and deter him from testifying against [Appellant]. Once [Appellant] initiated the verbal argument with Saunders and his mother, his paramour joined in with him. Both [Appellant] and his paramour verbally harassed and taunted Saunders, before walking away together. **Based on the relationship between [Appellant] and his paramour, coupled with their actions, [Appellant] and his paramour acted in concert to threaten Saunders**.

Trial Court Opinion, 3/11/19, at 5 (emphasis added).

As the record supports the trial court's reasoning, we discern no abuse of discretion in the court's determination that the evidence was sufficient to

conclude that Appellant was guilty of conspiracy. In addition to the evidence discussed above, Mr. Saunders testified about "the confederacy" between Appellant and his girlfriend, explaining that he assumed the woman with Appellant was Appellant's girlfriend because he had seen "them together all the time . . . in the neighborhood," N.T., 11/27/18, at 19. In sum, the evidence was sufficient to sustain the trial court's finding that Appellant was guilty of conspiracy.

Appellant next assails the sufficiency of the evidence regarding Appellant's conviction of terroristic threats. The Crimes Code defines terroristic threats in relevant part:

> (a) A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) Commit any crime of violence with intent to terrorize another.

18 Pa.C.S.A. § 2706(a)(1). This Court has held:

> [t]he elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize or with reckless disregard of the risk of causing such terror. Section 2706 defines the word, "communicates," to mean "conveys in person or by written or electronic means ...."

*Commonwealth v. Vergilio*, 103 A.3d 831, 833 (Pa. Super. 2014) (citations omitted). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003) (citation omitted). "[I]t is unnecessary for an individual to specifically articulate the

crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016). "[T]he harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Reynolds***, 835 A.2d at 730.

The trial court in this case found the evidence "more than sufficient" to sustain Appellant's conviction of terroristic threats. ***See*** Trial Court Opinion, 3/11/19, at 4. The court rightly stated:

> [Appellant] made a terroristic threat when he threatened to kill Saunders. Murder is a crime of violence. ***See Commonwealth v. Beasley***, 138 A.3d 39 (Pa. Super. 2016) . . . [Appellant's] intent to terrorize Saunders for the purpose of preventing his testimony at the preliminary hearing is evident by [Appellant's] anger and hostile demeanor toward Saunders. [Appellant] and his paramour approached Saunders in such a threatening manner that [Saunders'] mother felt compelled to intervene and prepare to defend her son.

***Id.*** at 4.

Upon review, we agree with the trial court, and further note Mr. Saunders' actions in reporting the incident to police and moving from the neighborhood, which reflect the harm of "psychological distress" the statute seeks to prevent. ***Reynolds***, ***supra***. The Commonwealth presented sufficient evidence from which the trial court could reasonably find that the Commonwealth had proven the requisite elements of terroristic threats.

In his fourth and final issue, Appellant challenges the weight of the evidence. We agree with the Commonwealth that the claim is waived because Appellant's "argument consists of a one-paragraph discuss that incorporates by reference 'the gaps in the evidence' discussed in the arguments he made regarding the sufficiency of the evidence . . . which is inadequate to warrant appellate review." Commonwealth Brief at 13, citing Pa.R.A.P. 2119 (requiring brief to contain citation to the record and legal authority); ***see also Commonwealth v. McMullen***, 745 A.2d 683, 689 (Pa. Super. 2000) (blanket assertions unsupported by argument and legal authority result in waiver). ***See also*** Appellant's Brief at 20.

In sum, we find no merit to Appellant's issues, and therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Colins joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/20

- 11 -