**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
      :            PENNSYLVANIA
      :
v.      :
      :
      :
GABRIEL OMAR OLIVENCIA      :
      :
Appellant      :  No. 931 MDA 2025

Appeal from the Judgment of Sentence Entered June 12, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005262-2021

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
      :            PENNSYLVANIA
      :
v.      :
      :
      :
GABRIEL OMAR OLIVENCIA      :
      :
Appellant      :  No. 932 MDA 2025

Appeal from the Judgment of Sentence Entered June 12, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005265-2021

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY LANE, J.:          **FILED MARCH 13, 2026**

Gabriel Omar Olivencia ("Olivencia") appeals from the judgment of sentence imposed following his conviction for simple assault[1] at docket 5265-2021, as well as his convictions for two counts of involuntary deviate sexual intercourse with a child, and one count each of rape of a child, aggravated indecent assault of a child, unlawful contact with a minor, unlawful obscene

---

[1] *See* 18 Pa.C.S.A. § 2701(a).

and sexual contact with a minor, and corruption of minors[2] at docket 5262-2021. After careful review, we affirm Olivencia's convictions, and affirm in part and vacate in part, his judgment of sentence.

For purposes of this appeal, a detailed recitation of the facts is not necessary. Briefly, in 2021, Officer Jarrod Haar ("Officer Haar") was on patrol when he received a report of a domestic argument occurring at a residence located in Harrisburg, Pennsylvania. Upon arriving at the residence and knocking on the front door, Officer Haar encountered Tatiana Rosario ("Rosario") and her small child. Although Officer Haar observed Rosario to be "extremely distraught [and] crying" to the extent that it was very difficult for her to tell [him] what was going on," Rosario nonetheless managed to explain that she called 911 because she and her ex-boyfriend, Olivencia, had gotten into an argument earlier that evening, and that in the midst of this argument, Olivencia had: (1) punched her in the face with a closed fist; and (2) made a comment to her about his having sexually abused her thirteen-year-old daughter, V.K. N.T., 12/18/24, at 7. Rosario then clarified that Olivencia had since departed from the residence, and she did not know where he went. Following a brief search of the residence and surrounding property to confirm that Olivencia was no longer on the premises, Officer Haar finished taking Rosario's statement before departing from her home.

---

[2] *See* 18 Pa.C.S.A. §§ 3123(b), 3121(c), 3125(b), 6318(a)(1), 6318(a)(4), 6301(a)(1)(ii).

Later that same night, Officer Haar received a report that Rosario had again called 911 and told the dispatch officer that Olivencia had returned to her residence and was currently in her backyard. As a result of this report, Officer Haar, accompanied by multiple other officers, returned to Rosario's residence, located Olivencia sitting in Rosario's backyard, and ultimately arrested him. The Commonwealth thereafter charged Olivencia at two separate dockets with, *inter alia*, each of the above-listed crimes.

Following the trial court's issuance of an order joining the two dockets, the matter proceeded to a bifurcated jury trial at the conclusion of which the jury found Olivencia guilty of simple assault at docket 5265-2021, but was unable to reach a unanimous verdict with respect to the aforementioned charges docketed at 5262-2021. As a result, the trial court declared a mistrial with respect to those counts. The Commonwealth elected to retry those counts and a subsequent jury found Olivencia guilty of these crimes, as well.

The trial court deferred sentencing pending an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine whether Olivencia met the criteria to be classified as a sexually violent predator ("SVP"). In a report dated February 18, 2025, the assigned SOAB member concluded that Olivencia met the criteria to be classified as an SVP. **See** SOAB Report, 2/18/25, at unnumbered 1. On June 12, 2025, the trial court conducted an SVP hearing, during which the Commonwealth presented the expert testimony of the SOAB member, who explained the contents of his SVP report in detail and offered his opinion that Olivencia met the criteria to be classified as an

SVP. At the conclusion of the hearing, the trial court determined that Olivencia was an SVP. Following this determination, the matter proceeded directly to sentencing, whereupon the trial court imposed an aggregate sentence of twenty-three to forty-six years' imprisonment for the crimes docketed at 5262-2021, with a consecutive term of one to two years' imprisonment for the crime of simple assault docketed at 5265-2021.

After announcing the above sentence, the trial court orally imposed the following conditions on Olivencia's parole:

> Before you read [Olivencia's] post-sentencing rights, we will review with him his conditions of parole, which . . . will be a part of this record, and . . . the court will make these conditions as part of the court's conditions.
>
> You will likely be under the supervision of Harrisburg district or subdistrict. So [Olivencia] will not be able to leave without the permission – without permission of the parole staff.
>
> Your residence may not be changed without written permission of parole staff. You must maintain regular contact with your parole supervision staff by regularly reporting; by notifying them within [seventy-two] hours of an arrest or receipt of a summons or citation or anything punishable by imprisonment upon conviction.
>
> You must notify your parole staff within [seventy-two] hours of any change in your status, including, but not limited to, employment, on-the-job training, or education. You shall abstain from the possession of any illegal narcotics or drugs; refrain from owning any firearm or possessing any weapon; refrain from any assaultive behavior.
>
> You shall and must pay on your fines and costs as scheduled by your probation or parole officer based on their payment schedule, provide proof of such payments to your parole staff, and keep them informed of your financial ability to pay your fines, costs, and restitution.

You, because of your sex offender status, will have to obtain and receive all evaluations and treatment and comply with that treatment and any recommendations provided by that provider.

You're responsible for any costs associated with that treatment. You have to provide written authorization for release of confidential information between your sex offender treatment providers and the parole supervision staff.

You must submit to regular polygraph examinations as directed by your treatment provider. You will have no contact with the victim, the victim's family, or possess any mementos of the victim without the prior approval of your parole supervision staff.

You shall have no unsupervised contact with minors under the age of [eighteen]. You will notify your parole supervision staff . . . or any treatment providers of any accidental contact you have with anyone under the age of [eighteen], any of the victims, or the victim's family in this case.

You may not possess or transport any pornographic or sexually explicit photographs, magazines, DVD[s], CDs, or anything electronic. You may not frequent any adult bookstores, sex shops, topless bars, strip clubs, massage parlors.

You shall not solicit any prostitutes or engage in prostitution or any escort services. You may not own any electronic device that has not been approved by your parole supervision staff.

. . . You shall not participate in any social networking, dating websites, or chatrooms without the prior approval of your probation supervising staff.

You are prohibited from using any form of encryption, private browsers, incognito, secret folders, or anything like that to shield the use from observers. You have to live in your approved parole address and not sleep overnight in an address other than your parole address.

You must inform your parole supervisor if you're in a relationship of a sexual nature. You will not engage in any . . . public sexual activity in any public area that may be viewed.

- 5 -

. . . You will have to submit to GPS monitoring as deemed necessary by [your] parole supervision staff whenever you're in violation status or a period of unemployment.

You have to inform your parole supervisor of any and all medications you're prescribed. You will not use any medications or supplements that are intended to enhance sexual performance or for erectile dysfunction without the approval of your parole supervision staff.

You may not move any individual into your approved residence without permission of the parole staff. And finally, you must maintain verifiable, gainful employment.

N.T., 6/12/25, at 38-42 (unnecessary capitalization omitted). The trial court subsequently incorporated this language into its written sentencing order. *See* Sentencing Order, 6/16/25, at unnumbered 2-5. Olivencia did not file a post-sentence motion. Instead, he filed a timely notice of appeal, and both he and the trial court complied with the requirements of Pa.R.A.P. 1925.

Olivencia raises the following issue for our review: "Did the sentencing court err in imposing conditions of parole for a sentence exceeding two years?" Olivencia's Brief at 6.

Olivencia's sole issue on appeal concerns whether the trial court had the requisite authority to impose conditions on the state-supervised parole portion of his sentence, which consists of an aggregate term of twenty-four to forty-eight years' imprisonment. It is well-settled that "[a] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence." *Commonwealth v. Prince*, 320 A.3d 698, 700 (Pa. Super. 2024). Accordingly, "[w]hen the

legality of a sentence is at issue on appeal, our standard of review is *de novo*[,] and our scope of review is plenary." *Id*.

As this Court has explained, "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Id*. If this Court determines that a sentence is illegal, we must vacate that sentence. *See id*. Relevantly,"[w]here the trial court imposes a maximum imprisonment sentence of two or more years, the Pennsylvania Board of Probation and Parole ("PBPP") has exclusive authority over the terms of the defendant's parole." *Commonwealth v. Merced*, 308 A.3d 1277, 1283 (Pa. Super. 2024); *see also* 61 Pa.C.S.A. § 6132(a)(3) (stating that the PBPP "shall have exclusive power[ t]o establish special conditions of supervision for paroled offenders" where the offender was not "sentenced for a maximum period of less than two years"). Consequently, "trial courts do not have statutory authority to impose conditions on a state sentence [of two or more years], and any condition the sentencing court purports to impose on a defendant's state parole [in this fashion] is advisory only." *Id*. (quotation marks, brackets, and citation omitted); *see also* 61 Pa.C.S.A. § 6134(b)(1), (2) (clarifying that although "[a] judge may make at any time a recommendation to the [PBPP] respecting the offender sentenced and the term of imprisonment the judge believes that offender should be required to serve before parole is granted to that offender[,]" any such recommendation "respecting the parole or terms of the parole of an offender shall be advisory only" and not binding upon the PBPP).

Olivencia argues that the trial court erred by "imposing any conditions" to the state-supervised parole accompanying his sentence of twenty-four to forty-eight years' imprisonment. Olivencia's Brief at 14. Olivencia specifically claims that the trial court's imposition of "numerous conditions, including conditions regarding sex offender conditions, rules of parole, conditions regarding when and how [he] was to interact with parole, and other conditions" was illegal, as he maintains that such actions were solely "within the purview of the parole board." *Id*. at 16. Accordingly, Olivencia submits that even though the parole board could theoretically "impose similar conditions" to those specified by the trial court, the trial court's unilateral imposition of these conditions was "illegal and must be vacated." *Id*.

In addressing Olivencia's claim, the trial court acknowledged that it lacked the "authority to determine the conditions of" Olivencia's parole, and agreed that any conditions that it "purported to impose" in this capacity at sentencing could only be advisory. Trial Court Opinion, 9/8/25, at 3. As such, the trial court conceded that should any of "the conditions set forth in [its] sentencing order [be] construed [as] conditions of parole[,]" the PBPP should treat them as strictly advisory "when making determinations about [Olivencia's] parole conditions in the future." *Id*. at 3-4.

Based on our review of the record and the governing statutes, we conclude the trial court's imposition of conditions to Olivencia's state-supervised parole at sentencing was illegal for want of statutory authority. *See Prince*, 320 A.3d at 700. Here, because the trial court imposed upon

Olivencia an aggregate sentence of more than two years' imprisonment, our sentencing code conferred upon the PBPP **exclusive** authority over the terms of his parole. **See** 61 Pa.C.S.A. § 6132(a)(3); **see also Merced**, 308 A.3d at 1283. Accordingly, when the trial court purported to include multiple conditions on Olivencia's parole as part of his sentence, it did so without the requisite statutory authority. **See** 61 Pa.C.S.A. § 6134(b)(1), (2); **see also Merced**, 308 A.3d at 1283. Thus, we are constrained to hold that these parole conditions are illegal, and we necessarily vacate them. **See Prince**, 320 A.3d at 700.

As Olivencia does not challenge his convictions nor any other aspect of his judgment of sentence, we affirm his convictions and the trial court's sentencing order in all other respects. Further, because our disposition does not impact the term of Olivencia's incarceration, we need not remand for resentencing. **See Commonwealth v. Martinez**, 153 A.3d 1025, 1033 (Pa. Super. 2016) (indicating that this Court need not remand for resentencing where our disposition does not upset the trial court's overall sentencing scheme).

Convictions affirmed. Judgment of sentence affirmed in part, vacated in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/13/2026