J-A13020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KHEMMATHAT FARISS | : | |
| | : | |
| Appellant | : | No. 2046 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 10, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002231-2017

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                       Filed: August 25, 2020

Khemmathat Fariss appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, following his plea of guilty but mentally ill to one count each of attempted murder, robbery of a motor vehicle, burglary, kidnapping, aggravated assault, unlawful restraint, terroristic threats, false imprisonment, simple assault, and access device fraud; two counts of strangulation; three counts each of robbery, theft by unlawful taking, and receiving stolen property; and four counts of possession of an instrument of crime (PIC).[1]  Upon careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a); 3702(a); 3502(a)(1)(i); 2901(a)(2); 2702(a)(1); 2902(a)(1); 2706(a)(1); 2903(a); 2701(a)(1); 4106(a)(1)(ii); 2718(a)(1), (2); 3701(a)(1)(ii), (iii), (iv);  3921(a); 3925(a); and 907(a), respectively.

The trial court relied on the Commonwealth's recitation of the facts and circumstances, set forth as follows, at the sentencing hearing:

[On February 22, 2017,] prior to [] 11:00 a.m.[, Fariss], age [seventeen], entered the victim's home [in] East Brandywine Township, Chester County, [] and stole some money and her credit cards.

The victim[,] C[.]K[.], who was [seventy-two years old] at the time and lived alone in a small cottage [], discovered the cards missing and contacted [the] police[,] but decided she would complete the report after she returned from work. She went to work and returned home [at] about 5:00 p.m.

When she entered her home[,] she was immediately attacked by [Fariss,] who was wearing black gloves and a mask. [Fariss] strangled [C.K.] and she lost consciousness as a result[. C.K.] regained consciousness as [Fariss] was restraining her. [Fariss] covered her head with a black fabric reusable shopping bag and secured it tightly around her neck with [d]uct tape. [Fariss] bound [C.K.'s] hands with zip ties and cloth, bound her knees and ankles with [d]uct tape[,] and threatened her by saying, ["Y]ou'll be with Jesus.["]

[Fariss] then forced [C.K.] into a small dark closet under the stairs of the basement and jammed the outside closet latch with a screw to prevent [C.K.'s] exit, thereby, creating a condition which could have led to her death. [C.K.] was left there bound with no food, water, or light. The closet was in an unheated part of the house.[2] [C.K.] remained there in the closet until she was found by her daughter-in-law four days later on February 26[,] 2017.

When she was found[, C.K.] was suffering from severe dehydration, malnutrition, and trauma. She had bruising under her eyes. Her nose and mouth were bloodied. She had bruises, blisters, and avulsions on her wrist and had ligature marks on her right wrist. The first responder who removed the bag from her

---

[2] The closet was not heated, and although it was February, the temperature was in the seventies that week, which helped C.K. stay alive. *See* N.T. Sentencing, 5/2/19, at 6.

head said that the [d]uct tape around [C.K.'s] neck was so tight that it was difficult to cut without risking cutting [her] neck.

[C.K.] spent about a week in the hospital. She was diagnosed with acute renal failure[, a urinary tract infection, and] rhabdomyolysis, which is a condition [that] results from dying muscle fibers releasing contents into the bloodstream[] and [] can be caused by prolonged immobilization[. C.K. also had infected wounds from lying in a prone position for so long, which required treatment over a course of months.

While [Fariss] was at [C.K.'s] home[,] he stole her Fiat 500, an iPhone, a laptop, credit cards, clothing[,] and jewelry. [Fariss] was later identified on surveillance video at a 7-Eleven in the area of Baltimore, Maryland[,] where he arrived in [C.K.'s] car and used her credit card to make a purchase of $12.90 at around 10:00 p.m. on February 22[, 2017,] the day of the attack.

[Fariss] had absconded from Devereux residential treatment facility in Wallace Township early on the morning he attacked [C.K.]. [Fariss] returned to Devereux two days later on [February 24, 2017,] which was still two days before [C.K.] was discovered. [C.K.'s] phone was later found on a windowsill near [Fariss'] room [at Devereux].

When [Fariss] was arrested several days later[,] he had bruises on the inside of his arm consistent with choking [C.K.] The crime lab later determined that a fingerprint found on [d]uct tape used to bind [C.K.] matched [Fariss' fingerprint,] and that th[e] fingerprint was [made with] [C.K.'s] blood.

[C.K.'s] car was found a few months later[,] after the charges were filed[,] on a remote part of the Devereux facility's property. [Fariss] returned to Devereux two days after the attack[. H]e told no one what he did.

During the time he was gone[, Fariss] had [C.K.'s] phone and likely had access to other phones. [Fariss] was accessing social media. There were no anonymous calls or tips made to authorities alerting them to [C.K.'s] condition.

Trial Court Opinion, 9/17/19, at 5-6, (quoting N.T. Sentencing, 5/2/19, at 3-

7) (internal brackets omitted).

On March 2, 2017, the Commonwealth filed a juvenile petition charging Fariss with the above-stated crimes. Three days later, the Commonwealth filed a petition seeking to transfer the matter to the court of common pleas to have Fariss tried as an adult. Following two hearings on the transfer petition, the court entered an order granting the Commonwealth's transfer request on July 7, 2017. On January 31, 2019, Fariss entered an open plea of guilty but mentally ill to all charges against him. On February 5, 2019, the court conducted a hearing to determine whether Fariss was mentally ill. Ultimately, the court accepted Fariss' open plea of guilty but mentally ill on April 2, 2019.

On May 2, 2019, the court sentenced Fariss to an aggregate sentence of twenty to eighty years' incarceration. On May 13, 2019, Fariss filed a post-sentence motion seeking reconsideration of his sentence, which the court granted. Thereafter, the court reduced Fariss' sentence to an aggregate term of twenty to fifty years' incarceration. Fariss timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following questions for our review:

> 1. Whether the sentencing court sentenced outside the sentencing guidelines[,] making [Fariss'] sentence manifestly excessive and unreasonable?
>
> 2. Whether the sentencing court abused its discretion when it sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable?
>
> 3. Whether the sentencing court erred, in regard to [t]erroristic [t]hreats, when it did not merge the charge for sentencing purposes, as agreed upon by the Commonwealth and [d]efense [c]ounsel prior to sentencing?

Appellant's Brief, at 6.

Fariss' first two claims implicate the discretionary aspects of his sentence. We have previously stated that defendants are not entitled to review of the discretionary aspects of their sentences as of right; instead, this Court's jurisdiction must be invoked by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (quoting **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super 2006)) (internal brackets omitted).

In **Commonwealth v. Kiesel**, 854 A.2d 530 (Pa. Super. 2004), we discussed the Rule 2119(f) requirements in greater detail:

> Rule 2119(f) requires only a concise statement of the reasons [a]ppellant believes entitle him to allowance of appeal. The concise statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates. Additionally, the statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. If the statement meets these requirements, we can decide whether a substantial question exists.

**Id**. at 532 (internal citations and quotation marks omitted) (citing **Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa. Super. 2000) (en banc)).

Here, in his Rule 2119(f) statement, Fariss first notes the four-part test above, and then summarizes our Supreme Court's holding in ***Commonwealth v. Mouzon***, 812 A.2d 617 (Pa. 2002): that an appellant does not, as a matter of law, fail to raise a substantial question that his sentence was manifestly excessive, merely because his sentence was imposed within the statutory limits. ***See*** Appellant's Brief, at 14-16; ***see also Mouzon***, ***supra*** at 627 (if appellant complies with all statutory and procedural requirements regarding challenge to discretionary aspects of sentencing, and articulates substantial question in Rule 2119(f) statement warranting appellate review, this Court must review manner in which trial court exercised discretion). Fariss' Rule 2119(f) statement then discusses the facts of his particular case:

> In the instant case, [Fariss asserts] that this [] Court can decide his case on the merits based on the holding in ***Mouzon***. Similarly to the appellant in ***Mouzon***, [Fariss] has articulated reasons why his sentence raises doubt that the trial court [] properly consider[ed] the general [sentencing] guidelines. (R[.R.] at 482a-486a). In [Fariss'] [c]oncise [s]tatement of [errors] [c]omplained [of] on [a]ppeal[,] [Fariss] cited to specific [c]ounts where he asserts the trial court erred or abused its discretion when ordering his judgment of sentence. (***See*** Appendix C). [Fariss] has complied with all statutory and procedural requirements regarding a challenge to the discretionary aspects of his sentence and therefore this Court should proceed to his claim on the merits outlined below.

Appellant's Brief, at 16-17.

Here, Fariss' citation to the record is to his motion for reconsideration of sentence, filed on May 13, 2019, and his citation to "Appendix C" is to his Rule 1925(b) concise statement of errors complained of on appeal. Fariss' Rule

2119(f) statement does not "specify where his sentence falls in relation to the sentencing guidelines" and fails to specify "the particular provision of the code" his sentence violates. *See Kiesel*, *supra*. Similarly, Fariss' Rule 2119(f) statement fails to "specify what fundamental norm [his] sentence violates and the manner in which it violates that norm." *Id.* Thus, we conclude that Fariss' Rule 2119(f) statement is insufficient; therefore, we cannot review whether it raises a substantial question. *See id.*; *see also Goggins*, *supra* at 727 ("when a Rule 2119(f) statement 'contains incantations of statutory provisions and pronouncements of conclusions of law[,]' it is inadequate.").

Also, we have previously stated:

> [t]he Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. *See* Pa.R.A.P. 2119. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (internal citations omitted). In addition, we previously cautioned appellants that Rule 2119(f) requires more than a simple citation to *Mouzon*. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa. Super. 2013) ("[w]e caution defendants that a simple citation to *Mouzon*, *Dodge II*, or another case may not be sufficient where the facts of the case do not warrant the conclusion that there is a plausible argument that the sentence is *prima facie*

excessive based on the criminal conduct involved.").[3]  Based on the foregoing,

we conclude that Fariss' Rule 2119(f) statement is insufficient, and therefore,

we will not address the merits of his discretionary aspects of sentencing

claims.  **See Moury**, **supra**.

In his final claim, Fariss argues that his conviction for terroristic threats

should have merged for sentencing purposes.  "A claim that crimes should

have merged for sentencing purposes raises a challenge to the legality of the

sentence.  Therefore, our standard of review is *de novo* and our scope of

review is plenary."  **Commonwealth v. Quintua**, 56 A.3d 399, 400 (Pa.

Super. 2012) (internal citation omitted).

To support his argument, Fariss cites to **Commonwealth v. Martinez**,

153 A.3d 1025 (Pa. Super. 2016), and asserts that his situation is analogous

to that case.  In **Martinez**, our Court held that the defendant's terroristic

threats and robbery convictions merged because "both offenses arose from

the same act" and the relevant charging instruments "did not allege criminal

---

[3] We conclude that Farris fails to raises a plausible argument that his sentence is *prima facie* excessive based on his criminal conduct.  Fariss' sentence of twenty to fifty years' incarceration—in light of the disturbing nature and circumstances of the attempted murder, aggravated assault, strangulation, kidnapping, and other crimes he committed—is not *prima facie* excessive. **See Commonwealth v. Mastromarino**, 2 A.3d 581, 589 (Pa. Super. 2010) ("[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.").

acts that constituted terroristic threats as distinct or delineated from the conduct that constituted robbery." *Id.* at 1033.

The court in *Martinez* explained the issue of merger as follows:

Whether the[] offenses merge turns on [s]ection 9765 of our Sentencing Code, which provides:

> **§ 9765. Merger of sentences**[.]
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

The statute's mandate is clear. It prohibits merger unless two distinct facts are present: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime[; if so,] then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, *we must examine the charging documents filed by the Commonwealth.*

*Id.* at 1030-31 (emphasis added) (internal quotation marks and citations omitted). The *Martinez* court elaborated that, when analyzing the charging documents, "the requirements were satisfied where the criminal complaint and information set forth generic charges . . . while the affidavit of probable cause supplied the factual narrative." *Id.* at 1031-1032.

In **Martinez**, this Court held that merger was required, and we analyzed the relevant charging documents as follows:

Applying pertinent authority to the present matter, it is apparent from the criminal information, complaint, and affidavit of probable cause that the Commonwealth did not allege criminal acts that constituted terroristic threats as distinct or delineated from the conduct that constituted robbery. Indeed, the information offers only a generic recitation of the offenses and the statutory elements of each, while the factual accounts in both the complaint and the affidavit of probable cause describe Appellant's "approach" of the complainant and robbery by gunpoint in the next moment as a seamless event occurring in the course of a theft.

**Id.** at 1032.

Conversely, in **Commonwealth v. Melvin**, 548 A.2d 275 (Pa. Super. 1988), we held that the appellant's terroristic threats and robbery charges did not merge for sentencing purposes. In **Melvin**, we stated:

[I]f a defendant commits several [discrete] criminal acts, he may be punished separately for them regardless of their close relationship in a single criminal episode as long as each act is a separate injury in itself. Here, the terroristic threat at issue was made by Melvin, in an attempt to aid his escape, *after the robbery was completed.* Although the terroristic threat and the robbery occurred during the same episode, each act was a separate and distinct injury to the Commonwealth.

**Id.** at 280-81 (emphasis in original; internal citation omitted).

Here, the Commonwealth's information charged Fariss with robbery at counts 2, 3, and 10. The sentencing court, at count 2, sentenced Farris to four to ten years' incarceration, with no further penalty imposed at counts 3 and 10. For Fariss' terroristic threats conviction, the court sentenced him to one to five years' incarceration, to run consecutively to counts 2 and 4 and

- 10 -

concurrently with count 13.[4]  Specifically, Fariss was sentenced on count 2 for

his conviction for the following robbery offense:

> § 3701. Robbery.
>
> **(a)  Offense defined.**
>
> **(1)** A person is guilty of robbery if, in the course of committing a theft, he:
>
> . . .
>
>> **(ii)** threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).  Fariss was also charged with and pled guilty

but mentally ill to one count of terroristic threats, defined in the Crimes Code

as follows:

> § 2706. Terroristic Threats.
>
> **(a) Offense defined. —** A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
>> **(1)** commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S.A. § 2706(a)(1).

Here, the factual account in the Commonwealth's affidavit of probable

cause, contained within the Chester County Juvenile Court allegation, states:

> On Wednesday, February 22, 2017, Khemmathat [Fariss] assaulted and robbed a [seventy-two-year-old] female victim at the victim's home, located [] in East Brandywine Township,

---

[4] Fariss would still be subject to twenty to fifty years' incarceration without any sentence on terroristic threats because Fariss' terroristic threats sentence runs concurrently with count 13, which has a longer minimum sentence and an equivalent maximum sentence.

Chester County, PA. . . . Among other evidence, the police located *video of* [*Fariss*] *using the victim's credit card* and the victim's car after the assault*, and found the victim's phone with his other belongings* after he returned to Devereux*.*

. . .

On Sunday, [February 26, 2017], [East Brandywine Township Police Department] was dispatched for a home invasion robbery [in] East Brandywine Township, Chester County. This address is the residence of the [seventy-two-year-old] female victim who resides alone.

. . .

The victim was found bound in a small unlit storage area on the ground floor next to the entry door. . . . The victim's head was covered by a reusable shopping bag attached with duct tape around her neck; her arms secured behind her back with zip ties, duct tape and a heavy cloth; and her knees and ankles bound with duct tape. The victim was still alive.

. . .

The victim was observed to exhibit heavy bruising under her eyes and a significant amount of dried blood on her nose and mouth area, even after cleaning by medical personnel. Also observed was bruising, discoloration, blistering and avulsion on her wrists. The victim's right wrist had a distinct patterned ligature mark. Medical personnel reported the victim was suffering from severe dehydration, malnutrition and trauma consistent with being bound and remaining in one position for several days.

The victim related that on Wednesday[, February 22, 2017] she left her home from approximately [9 to 11 a.m.] On returning home she discovered someone had entered her residence, which she never locks*,* and had removed credit cards from within. She then left for work. She again returned home at approximately [7:30 p.m.] and, upon entering, was grabbed by someone waiting inside the house. *The victim stated the bruising resulted possibly from being struck, but also from being violently throw[n] around in the confined space of the doorway. The actor began to strangle her with his right arm across her windpipe[,] at which point she was choked until she lost consciousness.* She stated she did partially regain consciousness and recalled the subject restraining

her. The victim remained in the closet for five [] days until discovered by her daughter-in-law.

The victim described her attacker as a male, dressed in all black including gloves and a ski mask. . . . *He only spoke once, telling her, "You'll be with Jesus soon."*

. . .

Also on [February 28, 2017] affiant Martin learned that *the victim's Target Red card* [] *was used on* [*February 22, 2017,*] *at the 7-11 store located* [] *in Baltimore*[,] *Maryland*[,] *for a purchase totaling $12.90. Video surveillance shows* [*Fariss*] *entering the store*[.] Video surveillance on the exterior of the business shows the suspect emerge from the victim's stolen Fiat 500.

Affidavit of Probable Cause, 8/2/17, at 2-4 (emphasis added).

Here, as the factual account in the Commonwealth's affidavit of probable cause reveals, Fariss' terroristic threats and robbery convictions amounted to "[discrete] criminal acts." ***See Melvin***, ***supra***. When Fariss told C.K. that, "You'll be with Jesus soon," prior to forcing and locking her in a small closet, he completed the crime of terroristic threats. ***See*** 18 Pa.C.S.A. § 2706(a)(1). Fariss independently completed the elements of his count 2 robbery conviction when he intentionally put C.K. in fear of immediate serious bodily injury by strangling her, by violently throwing her within the confined space of the doorway, and by securing a reusable bag around her neck with duct tape. These violent acts, performed by Fariss in the course of committing the thefts of C.K.'s iPhone and Target credit card, are sufficient to sustain Fariss' robbery conviction. ***See*** 18 Pa.C.S.A. § 3701(a)(1)(ii). Consequently, because Fariss committed "multiple criminal acts beyond that which is

- 13 -

necessary to establish the bare elements of the additional crime" he is guilty of multiple crimes, and his merger claim fails. ***See Martinez***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/20