J-S35036-25

2025 PA Super 264

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
ADOLFO CRUZ II :
:
Appellant : No. 352 MDA 2025

Appeal from the Judgment of Sentence Entered January 22, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004447-2023

BEFORE:  OLSON, J., MURRAY, J., and LANE, J.

OPINION BY LANE, J.:                    **FILED: NOVEMBER 26, 2025**

Adolfo Cruz II ("Cruz") appeals from the judgment of sentence imposed following his convictions for criminal trespass, defiant trespass, stalking, harassment, loitering and prowling at night time, and possession of drug paraphernalia.[1]  We hold, *inter alia*, that: (1) the trial court did not err in denying Cruz's motion to dismiss under Pa.R.Crim.P. 600, where the Commonwealth exercised due diligence in bringing the case to trial in accordance with York R.Crim.P. 600, and the delay resulted from judicial scheduling constraints beyond its control.  After careful review, we vacate the judgment of sentence imposed for harassment only and affirm in all other respects.

_____

[1] **See** 18 Pa.C.S.A. §§ 3503(a)(1)(ii), (b)(1)(iii), 2709.1(a)(1), 2709(a)(3), 5506; 35 P.S. § 780-113(a)(32).

By way of background, this case arises from Cruz's forcible entry into the home of his next-door neighbor, Stacey Fisher, during the early morning hours in August 2023. On August 21, 2023, the Fairview Township Police Department charged Cruz with the aforementioned offenses, as well as resisting arrest.[2]

The trial court held a preliminary hearing on September 6, 2023, at which it held the case for court. The court then assigned the case to the Honorable Amber Kraft. The court scheduled a preliminary arraignment, but Cruz waived it. The court then scheduled a pretrial conference for November 15, 2023. At this listing, however, the court continued the case at Cruz's request to allow him to consider a plea offer from the Commonwealth. The trial court charged the time against Cruz for Pennsylvania Rule of Criminal Procedure 600 purposes. The case was next listed for January 22, 2024, but then rescheduled by the court to January 31, 2024. On January 31, 2024, Cruz appeared for a plea hearing but chose to withdraw his plea before its completion. Therefore, the court placed the matter on the trial list for the week of February 26, 2024.

Thereafter, the case appeared on several monthly trial lists throughout 2024. At the November 21, 2024, call of the trial list, the court scheduled Cruz's case for a two-day jury trial during the week of December 2, 2024,

---

[2] *See* 18 Pa.C.S.A. § 5104.

after confirming that both parties were ready to proceed and that no discovery issues remained. At proceedings on December 5 and December 12, 2024, however, the trial court stated that the "case[] will remain on the list." N.T., 12/5/24, at 2. On December 16, 2024, Cruz filed a motion to dismiss the charges pursuant to Rule 600, asserting that the Commonwealth failed to bring him to trial within the prescribed period and had not exercised due diligence.

On January 3, 2025, Judge Kraft held a Rule 600 hearing. The Commonwealth agreed with Cruz's calculation of most time periods but asserted that the twenty-six-day gap, from January 31 to February 26, 2024, was attributable to the trial court due to scheduling constraints, while the central issue remained whether the Commonwealth exercised due diligence.

The Commonwealth then presented one witness, Jessica Gumerlock ("Gumerlock"), the deputy trial management administrator for the York County District Attorney's Office. She testified to the following. She was responsible for preparing the "monthly trial lists" that were in effect for most of Cruz's case.[3] N.T., 1/3/25, at 5. Gumerlock generated a list of "all the cases[,about 3,000], that are current for a term," along with their Rule 600 mechanical run dates. *Id*. at 6, 8. Gumerlock then "cut" this list to cases

---

[3] Gumerlock testified the District Attorney's Office "just start[ed] a new trial system this year. [Previously, i]n the year 2024, . . . each week would have its own prioritized list." N.T., 1/3/25, at 6, 9-10.

with mechanical run dates within the next six months. *Id*. at 6. Next, the assistant district attorneys ("ADAs") marked the cases they believe were ready for trial.

"Once a case is marked ready," paralegals, case managers, and victim-witness coordinators contact police, defense counsel, victims, and witnesses to determine their availability for that month. *Id*. at 6, 11-12. Gumerlock then combined all of this information and sorted the cases by their Rule 600 dates to create a final "prioritized list." *Id*. at 6. The purpose of this process was to ensure that the "most Rule 600-sensitive" cases proceed to trial "as quickly as possible." *Id*. at 9.

When Gumerlock generated the prioritized list — which was typically "due" two to three weeks before the call of the list — she submitted it to court administration, who then managed and scheduled the cases on that list. *Id*. at 11. After Gumerlock finalized the list, she could not remove a case even if a new scheduling conflict arose, which prevented another case from taking that trial slot. Gumerlock explained that court administration, not the District Attorney's Office, determined "the trial calendar for . . . what [weeks were] trial weeks," as well as the number of cases permitted on each "prioritized list." *Id*. at 15. As a result, the Commonwealth's ability to schedule a case for trial depended not only on its readiness but also on the number of available trial "spots" allocated by the court for a given week. *Id*. at 15.

Gumerlock further testified that the first trial listing for Cruz's case was January 31, 2024, with a next available trial week of February 26, 2024. Cruz's case did not appear on the prioritized trial lists for February, March, April, or May 2024 because its Rule 600 date was more than six months away. Court administration permitted only a limited number of cases on each list, and Cruz's case ranked too low for inclusion.

For the months of June and July 2024, the ADA consistently marked Cruz's case "ready," but based on the number of spots set by court administration, Gumerlock could not include his case on the prioritized trial lists. *Id*. at 22-25. Gumerlock explained that in June, Cruz's case was number 846, but court administration considered only the top 113 cases. Cruz's case did not appear on a prioritized list until December 2024, when Gumerlock included it in the three trial weeks of "December 2nd, 9th, and 16th." *Id*. at 23-24.

Cruz argued that the Commonwealth: (1) failed to meet its burden of due diligence under Rule 600 because it did not take active, documented steps to advance the case between January and December 2024; and (2) relied instead on administrative scheduling constraints, and a flawed prioritization system that placed cases with later Rule 600 dates ahead of his. The Commonwealth responded that court scheduling constraints beyond its control caused the delays and that it had made reasonable efforts to bring the case to trial.

The trial court denied Cruz's Rule 600 motion, concluding that the Commonwealth had exercised due diligence to bring the case to trial and that the delays were administrative in nature, attributable to the court rather than to the Commonwealth.

Thereafter, the court assigned the case to the Honorable Joseph Adams. Jury selection commenced on January 13, 2025, and the trial spanned two days. The Commonwealth presented testimony from several witnesses. Fisher testified that she resided next door to Cruz in New Cumberland, York County. At approximately 2:00 in the morning, Fisher awoke to the sound of someone kicking open her front door. Minutes later, Cruz entered her bedroom, prompting Fisher to call 911. She armed herself with a baseball bat, struck Cruz, and ordered him to leave. Fisher testified that although it was dark, there was enough light for her to recognize Cruz because of his voice and appearance, as the two had been neighbors for six years.

After Cruz exited the home, he continued to prowl around the exterior. For the duration of the 911 call, more than five minutes, Cruz appeared at multiple windows, including those in the kitchen and living room, and at the back door. Cruz also made a series of hand gestures that Fisher interpreted as a threat to kill her. Fisher explained that the frame of her door was damaged.

Fairview Township Police Officer Theodore Kreitz ("Officer Kreitz") testified that he when he arrived on the scene, he saw other officers talking

with Cruz in his front yard. Officer Kreitz described Cruz as "all over the place, not really making a whole lot of sense." N.T., 1/13-14/25, at 112. When Cruz returned inside his home and locked the door, the officers ordered him to exit the residence. After hearing movement and locks engaging, they forced entry out of concern that Cruz might arm himself. Cruz refused to show his hands when ordered by the officers, and the officers deployed a taser and took him into custody.

While securing Cruz, Officer Kreitz observed, in plain view, items that he recognized as drug paraphernalia based on his extensive training and experience. These items included: (1) "a marijuana smoking device[;]" (2) "a homemade marijuana smoking device[;]" (3) small baggies containing white residue, commonly used "[for] packaging of controlled substances[;]" (4) tinfoil "[used] to ingest a controlled substance[;]" and (5) a pushrod commonly used "to move a controlled substance so you don't burn your fingers." N.T., 1/13-14/24, at 128-30.

On cross-examination, Officer Kreitz testified he did not conduct a narcotics field test on site, nor send the items to the Pennsylvania State Police for drug testing because "[they] typically don't send out paraphernalia." *Id*. at 158-59. On redirect by the Commonwealth, Officer Kreitz explained there was "[n]ot enough residue in the baggies[]" to produce a reaction. *Id*. at 175.

Fairview Township Police Officer Michael Bishop ("Officer Bishop") testified that he was the first to respond to the scene. Upon arrival, he observed that someone had damaged Fisher's front door near the lock, apparently forcing it open. Video footage played for the jury from Officer Bishop's body-worn camera showed damage to Fisher's door.

While transporting Cruz to the hospital in the back of his vehicle, Officer Bishop's mobile video recorder ("MVR") captured both the front dash and rear detainment area. *Id*. at 160-61, 244-45. Officer Bishop also confirmed that the hospital provided medical discharge paperwork showing that it treated Cruz for taser-related injuries but noted no additional injuries.

On the second day of trial, the Commonwealth disclosed additional discovery materials to Cruz, including his hospital discharge paperwork and a duplicate of Officer Bishop's body-worn camera footage, which a clerk had mistakenly labeled as MVR footage. Cruz filed a motion to reconsider dismissal under Rule 600 and a motion for mistrial. Cruz cited the Commonwealth's first-time disclosure during trial of the new evidence — his three-page medical discharge paperwork and the duplicate of Officer Bishop's body-worn camera footage. The trial court declined to revisit Judge Kraft's prior Rule 600 ruling, explaining that Judge Kraft had already resolved the issue. The trial court also denied Cruz's motion for mistrial, finding that the previously undisclosed medical discharge paperwork and body-worn camera footage were duplicative

of other evidence, and that Cruz had sufficient time to review the materials before trial resumed.

The Commonwealth then recalled Officer Bishop to clarify his prior testimony. He testified that the MVR footage from his patrol car, which would have shown the dash and rear detainment area, was not preserved. He also corrected his earlier statement about certain photographs, explaining that they depicted Cruz's door, not Fisher's. The photographs of Fisher's damaged door, which he had directed another officer to take, were not available. Finally, after reviewing the case file, he confirmed that the Commonwealth's evidence included Cruz's hospital discharge paperwork showing that the hospital treated him only for taser-related injuries.

Cruz did not present any evidence or testify on his own behalf. The jury found Cruz guilty of criminal trespass, defiant trespass, stalking, harassment, loitering and prowling at night time, and possession of drug paraphernalia.

On January 22, 2025, the trial court imposed a sentence of nine to twenty-three months' incarceration for criminal trespass, followed by concurrent one-year probationary terms for defiant trespass, stalking, harassment, and loitering and prowling at night time, and imposed court costs for possession of drug paraphernalia. At Cruz's request, the trial court scheduled a restitution hearing. Additionally, the Commonwealth timely filed a motion to amend the sentence pursuant to Pa.R.Crim.P. 721(B)(1) to add a no contact order for Fisher, which the court granted the same day. On

February 13, 2025, at the scheduled restitution hearing, the court withdrew the restitution portion of the sentence by order.

On March 13, 2025, Cruz filed a timely notice of appeal. That same day, the trial court entered an "Order Modifying Sentence" and an "Amended Order – Sentence/Penalty Imposed." On March 14, 2025, Cruz filed an amended notice of appeal from the judgment of sentence imposed January 22, 2025, and made final by the February 13, 2025 order revising restitution.[4]

Cruz raises the following issues for our review:

I. Did the trial court err in denying [Cruz]'s motion to dismiss pursuant to Rule 600 and err in denying [Cruz]'s motion to reconsider motion to dismiss pursuant to Rule 600 where [Cruz] was called to trial after the adjusted run date and where the Commonwealth failed to exercise due diligence to bring [Cruz] to trial?

II. Was there insufficient evidence to support the guilty verdict for:

a. Defiant trespass because there was no evidence that there was notice against trespass given by fencing or other enclosure manifestly designed to exclude intruders?

b. Stalking because there was no evidence that [Cruz] engaged in a course of conduct or a repeatedly committed acts toward another person?

c. Harassment because there was no evidence that [Cruz] engaged in a course of conduct or repeatedly committed acts which served no legitimate purpose?

---

[4] The appeal is properly before this Court. *See Commonwealth v. Agugliaro*, 342 A.3d 109, 112 (Pa. Super. 2025) (holding that a sentencing order remains interlocutory until the trial court enters an order resolving restitution).

d. Possession of drug paraphernalia because there was no evidence that [Cruz] had the requisite intent to use the materials for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the body a controlled substance?

III. Did the trial court err in sentencing [Cruz] on both stalking and the lesser-included harassment where those counts should have merged because the crimes arose from a single criminal act and the elements of harassment are included within the elements of stalking?

Cruz's Brief at 5-6 (unnecessary capitalization omitted).

In his first issue, Cruz challenges the denial of his Rule 600 motion and his motion to reconsider that ruling. It is well-settled:

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both

- 11 -

to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Moore*, 214 A.3d 244, 247-48 (Pa. Super. 2019)

(citations omitted). "An abuse occurs if the court overrides or misapplies the

law. To the extent this Court is required to review a trial court's conclusions

of law, our standard of review is *de novo* and our scope of review is plenary."

*Commonwealth v. Robinson*, 339 A.3d 1030, 1034 (Pa. Super. 2025)

(citations omitted).

Rule 600 requires . . . a case to be called to trial within 365 days from the date on which the criminal complaint was filed. *See* Pa.R.Crim.P. 600(A)(2)(a). Specifically, the point in time 365 days after the complaint is filed is known as the "mechanical run date." If the defendant is not brought to trial within the time required by the rule, he or she may, at any time before trial, file a written motion seeking dismissal of all charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

Under the old Rule 600, the mechanical run date could be exceeded through calculation of an adjusted run date by an accounting of two mutually exclusive categories: "excludable time" and "excusable delay." Our case law emphasized that "[e]xcludable time is delay that is attributable to the defendant or his counsel. Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." Dismissal of charges was then warranted if, after subtracting all excludable and excusable time, the defendant

- 12 -

had not been brought to trial within the term of the adjusted run date.

The new Rule 600 eliminated the distinction between these two buckets of removable calculable time. Under its new verbiage, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence" forms the basis of what is known as "includable time." *See* Pa.R.Crim.P. 600(C)(1). Conversely, all other periods of delay are excluded from the Rule 600 calculation. ***See id***.

Inherently, then, when a court is faced with a Rule 600 motion asserting a facial violation of the new Rule 600, the onus is on the Commonwealth to demonstrate that it engaged in due diligence in at least being capable of bringing a defendant to trial within the prescribed time parameters. The Commonwealth must show due diligence by a preponderance of the evidence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth."

Our Supreme Court in ***Commonwealth v. Mills***[, 162 A.3d 323 (Pa. 2017),] clarified that time attributable to the natural progression of a case through the court system (*e.g.*, the time between the preliminary hearing and the formal arraignment or pre-trial conference) is not considered "delay" and therefore is not excludable for the purposes of Rule 600. ***See id***. at 325.] However, if the court, itself, engaged in what is referred to in ***Mills*** as "judicial delay," such action, in most circumstances, could be excluded from the Rule 600 calculation. ***See id***. (distinguishing between ordinary trial preparation and judicial delay as, for example, a result of scheduling concerns). Accordingly, when determining the existence and import of delay for computational purposes, trial courts must exercise discretion to ascertain whether the period of time at issue is a delay attributable to the parties, the natural progression of the case, or the court's own calendar when the parties are prepared to proceed. ***See id***. (stating that "where a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable").

*Commonwealth v. Wiggins*, 248 A.3d 1285, 1288-89 (Pa. Super. 2021) (some citations omitted).

The York County Court of Common Pleas schedules criminal jury trials by term every month and has adopted a local rule to manage criminal cases in compliance with Pa.R.Crim.P. 600. *See* York R.Crim.P. 600. York County Local Rule 600 seeks "to ensure the efficient use of judicial resources" while "ensur[ing] defendants receive reasonable notice of the jury term during which their trials will commence." York R.Crim.P. 600(A).

Under York County Local Rule 600, the District Attorney's Office assembles a "Rule 600 list" that ranks all cases the district attorney intends to call to trial that term by Rule 600 priority and provides an estimated length for the trial for each case. The rule requires the District Attorney to submit this prioritized list of cases to the court administrator, no later than ten business days prior to the first day of the trial term, after consulting with defense counsel regarding estimated trial length and any scheduling conflicts. *See* York R.Crim.P. 600(C)(1), (3). The court administrator then "assign[s] cases for trial as each judge becomes available" in order of priority, allowing "minor deviations" to accommodate court and party availability. York R.Crim.P. 600(D)(1), (2)(c). The court administrator may schedule "date-

certain or date-and-judge-certain" cases out of sequence.[5]  York R.Crim.P. 600(D)(2)(a)).

Finally, this Court recognizes:

> The coordinate jurisdiction rule, put simply, states that "judges of coordinate jurisdiction should not overrule each other's decisions." The rule, applicable in both civil and criminal cases, "falls within the ambit of the 'law of the case doctrine.'"  Our Supreme Court explained . . . that the law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter."  "Among the related but distinct rules which make up the law of the case doctrine" is the rule that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court."

***Commonwealth v. King***, 999 A.2d 598, 600 (Pa. Super. 2010) (citations omitted).

Cruz argues that Judge Kraft erred in denying his Rule 600 motion and that the trial court erred in denying his subsequent motion for reconsideration. Cruz concedes that the period from November 15, 2023, through January 31, 2024 — prompted by his request to continue the pre-trial conference — constituted seventy-seven days of "excludable" delay attributable to him resulting in an adjusted run date of November 5, 2024.  Cruz's Brief at 18.

---

[5] ***See also*** York R.Crim.P. 600(B)(3) (defining "date-certain scheduling" to mean "that the trial shall commence on a specific date before any judge"), (4) (defining "date-and-judge-certain scheduling" to mean "that the trial shall commence on a specific date before [the scheduling] judge").

Instead, Cruz avers the period from January 31, 2024 to February 26, 2024 — "the date [the case was listed] for trial to the first available date it could go to trial" — was "attributable to the normal progression of a case [and thus] simply [was] not 'delay' for purposes of Rule 600[.]" *Id*. at 21-22 n.12.

Cruz maintains that although the ADA marked the case as "ready" in June and July 2024, "there was no testimony that it was marked 'ready'" from August through November 2024. *Id*. at 20. Cruz contends that while "[t]he Commonwealth argued that the never-ending master York County Trial List is what prevented [his] case from being called[, t]he Commonwealth . . . failed to present evidence to support this argument." *Id*. at 22. Cruz emphasizes that "[t]he Commonwealth failed to show that the case was, in fact, ready to go to trial at any time between its listing for trial in February 2024 and the [a]djusted [r]un [d]ate on November 5, 2024." *Id*. at 23.

Cruz contends that the trial court erred in attributing any delay solely to administrative factors and that the record demonstrates the Commonwealth's inaction rather than effort, warranting dismissal under Rule 600. Cruz concludes that Judge Kraft "erred in finding the Commonwealth acted with due diligence and erred in denying [his] motion." *Id*. at 23. Cruz further asserts the trial court erred in denying his motion to reconsider the denial of his Rule 600 motion. He points to the Commonwealth's production of previously undisclosed discovery as evidence of a lack of diligence and trial readiness.

At the conclusion of the Rule 600 hearing Judge Kraft ruled that:

[T]he time between when a case is listed and the next available trial date's on the court. That's not on the Commonwealth. That's not on the defense. So, for example, the time between when the case was listed January 31[, 2024] and the time it was listed February 26th, that time runs against the court and not either the Commonwealth or [Cruz].

And while I understand and certainly respect [Cruz]'s speedy trial rights, I also understand that the District Attorney's Office has to work within the confines and the numbers that they're given. And, ultimately, the test is due diligence. Is the District Attorney's Office sitting around . . . doing nothing, or are they trying to move cases forward. And from my perspective, I certainly believe that the District Attorney's Office is doing what they can within the confines of the system to get these cases called in to trial.

. . . I am going to deny the Rule 600 motion. I do think the Commonwealth has done their due diligence with respect to this case. . . .

N.T., 1/3/25, at 50-51.

In its opinion, the trial court reasoned:

At the January 3, 2025 hearing, the Commonwealth demonstrated due diligence through the testimony of [Gumerlock. She] detailed the procedures employed by the prosecution management system to prioritize Rule 600-sensitive cases. This system generates case lists by courtroom and submits them to court administration for scheduling.

This court found that the Commonwealth had fulfilled its due diligence obligation and that the delay was attributable to court scheduling constraints. Therefore, dismissal was unwarranted.

Trial Court Opinion, 5/9/25, at unnumbered 2-3 (unnecessary capitalization omitted).

We discern no abuse of discretion in Judge Kraft's denial of Cruz's Rule 600 motion, nor the trial court's subsequent denial of his motion for reconsideration. The record supports Judge Kraft's determination that the delays in bringing this matter to trial were administrative in nature and attributable to court scheduling constraints, rather than to a lack of diligence by the Commonwealth. *See Moore*, 214 A.3d at 250.

Instantly, the police filed a complaint against Cruz on August 21, 2023, establishing a mechanical run date of August 20, 2024, for Rule 600 purposes. *See Wiggins*, 248 A.3d at 1288-89. At the pre-trial conference on November 15, 2023, the court granted Cruz's request to postpone listing the case to allow him time to consider the Commonwealth's plea offer. The court relisted the case for January 22, 2024, and subsequently to January 31, 2024. Cruz concedes that this seventy-seven-day period is excluded under Rule 600, adjusting the run date to November 5, 2024.

On January 31, 2024, Cruz appeared for the scheduled plea hearing but withdrew his plea before completion. The court then placed the matter on the trial list for the week of February 26, 2024. Accordingly, this twenty-six-day period constituted excluded delay caused by circumstances beyond the Commonwealth's control, specifically Cruz's plea withdrawal, adjusting the run date to December 2, 2024. *See id*.

With respect to the remaining time, at the Rule 600 hearing, the Commonwealth presented testimony from Gumerlock, the deputy trial

management administrator for the District Attorney's Office, who described the process to generate monthly trial lists and to prioritize cases by Rule 600 dates. Gumerlock explained that the ADA marked Cruz's case "ready" for trial the months of June and July 2024, and the case remained on the lists every month thereafter. Gumerlock stated that, as court administration limited the number of cases each month, Cruz's case's low ranking on the Rule 600 report kept it off the prioritized lists until the November 21, 2024 call of the list. Per York County local procedure, as Cruz's Rule 600 priority increased, the court ultimately placed his case on the December 2024 trial lists.

This testimony supports the trial court's finding that the Commonwealth took reasonable, documented steps consistent with York County Local Rule 600 and the court's scheduling constraints to advance the case from the first trial listing in February 2024 through the November 2024 call of the list, when the court placed it on the prioritized December trial weeks. *See Wiggins*, 248 A.3d at 1288-89; *see also* York R.Crim.P. 600(A)-(D). Rule 600 does not require the Commonwealth to overcome judicial or administrative delays beyond its control, so long as it acts with due diligence. *See Wiggins*, 248 A.3d at 1288-89. Judge Kraft properly concluded that: (1) the Commonwealth satisfied its Rule 600 obligations; and (2) any resulting delay was chargeable to the trial court, including the 269 days between February 26, 2024, and the November 21, 2024 call of the list, resulting in an adjusted run date of August 28, 2025. *See id*.

With respect to the denial of reconsideration, we reiterate that the trial court denied Cruz's motion for mistrial, finding that the previously undisclosed medical discharge paperwork and body-worn camera footage were duplicative of other evidence, and that Cruz had sufficient time to review the materials before trial resumed. Accordingly, to the extent Cruz relies on the allegedly late discovery for relief from the initial Rule 600 motion, we determine that no relief is due. Thus, Cruz's first issue therefore warrants no relief.

In his second through fifth issues, Cruz challenges the sufficiency of the evidence supporting his convictions for defiant trespass, stalking, harassment, and possession of drug paraphernalia.

> Our standard of review when considering a challenge to the sufficiency of the evidence requires us to look at the evidence in a light most favorable to the verdict winner and determine whether the evidence presented, actual and/or circumstantial, was sufficient to enable a fact finder to find every element of the crime charged beyond a reasonable doubt.
>
> > In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition we note that the facts and the circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Coleman***, 984 A.2d 998, 1000-01 (Pa. Super. 2009) (citations omitted).

To sustain a conviction for defiant trespass under Subsection 3503(b)(1)(iii), the Commonwealth must prove three essential elements: (1)

the defendant entered or remained upon property without a right to do so; (2) the defendant knew they had no license or privilege to be on the property; and (3) notice against trespass was given by "fencing or other enclosure manifestly designed to exclude intruders." 18 Pa.C.S.A. § 3503(b)(1)(iii). Additionally, the offense includes an element of intent. *See Commonwealth v. Namack*, 663 A. 2d 191, 194 (Pa. Super. 1995) (citation omitted).

Cruz argues that the evidence was insufficient to sustain his conviction for defiant trespass. Cruz asserts that "[t]he Commonwealth failed to produce evidence that there was notice against trespass given by fencing or other enclosure manifestly designed to exclude intruders." Cruz's Brief at 26. Cruz argues that the trial court, in its opinion, improperly relied on evidence that Fisher gave him explicit notice of trespass "when she ordered [him] to leave her residence," and evidence of breaking down a locked door. *Id*. at 27. Cruz maintains that such factors are relevant to a different subsection of the statute.

> In its opinion, the trial court concluded:
>
> The testimony at trial established that [Cruz] forcibly entered [Fisher's] locked residence after being directed to leave . . .. [] Fisher testified that she gave [Cruz] explicit notice when she ordered [him] to leave her residence after he had broken down the door to her house. Moreover, the act of breaking down a locked door constitutes both actual and constructive notice against trespass.

Trial Court Opinion, 5/9/25, at unnumbered 3 (citations omitted).

- 21 -

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to sustain Cruz's conviction for defiant trespass. *See Coleman*, 984 A.2d at 1000. The Commonwealth presented ample circumstantial evidence that Cruz knowingly and forcibly entered Fisher's residence without license or privilege. *See Namack*, 663 A. 2d at 194; *see also* 18 Pa.C.S.A. § 3503(b)(1)(iii). Cruz broke through a locked door to gain entry, and Fisher immediately ordered him to leave. Even absent fencing, the locked door and Fisher's directive provided constructive notice. *See* 18 Pa.C.S.A. § 3503(b)(1)(iii). The jury was free to weigh Fisher's testimony. *See Coleman*, 984 A.2d at 1000.

For both stalking and harassment, Cruz claims the Commonwealth failed to prove a "course of conduct" or repeated acts. Cruz's Brief at 27, 29. He emphasizes that his actions constituted a single, continuous incident rather than multiple, distinct events. *Id*. at 27-30. Cruz concedes that after he exited the residence, he "remained outside the window for the time Fisher was on the phone." *Id*. at 28, 30. However, Cruz argues "there was no second act by which a pattern of actions could be established." *Id*.

Our Crimes Code defines stalking as, *inter alia*, engaging "in a course of conduct or repeatedly commits acts toward another person, . . . under circumstances which demonstrate either an intent to place [the] other person in reasonable fear of bodily injury or to cause substantial emotional distress." 18 Pa.C.S.A. § 2709.1. "For purposes of the stalking statute, course of

conduct is a 'pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct.'" ***Commonwealth v. Leach***, 729 A.2d 608, 611 (Pa Super. 1999) (citation omitted). A "course of conduct by its very nature requires a showing of a repetitive pattern of behavior," which the Commonwealth establishes by proving at least two related but separate events. ***Id***. at 611.

Harassment requires a course of conduct or repeated acts, "with intent to harass, annoy or alarm another," serving no legitimate purpose. 18 Pa.C.S.A. § 2709(a)(3). The harassment statute defines a "course of conduct" as a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.C.S.A. § 2709(f). While a single act does not meet the definition of a course of conduct, "more than one act over a short period of time" can satisfy this requirement. ***Commonwealth v. Coniker***, 290 A.3d 725, 734 (Pa. Super. 2023) (citation omitted).

Here, the trial court reasoned:

> [Cruz] argues that there was insufficient evidence to support the guilty verdict for stalking because there was no evidence that [he] engaged in a course of conduct or repeatedly committed acts toward another person. [Fisher] testified that [Cruz] repeatedly loitered near the residence, made threatening gestures, and persisted in conduct intended to harass and intimidate. Specifically, [Cruz] kept walking around [Fisher]'s residence after he was asked to leave and stood in the windows and doorway of the residence making hand gestures that indicated that [he] wanted to kill her. These actions satisfy the statutory elements of both stalking and harassment.

Trial Court Opinion, 5/9/25, at unnumbered 3-4 (citations omitted).

The record also supports Cruz's convictions for stalking and harassment. **See Coleman**, 984 A.2d at 1000-01. Fisher testified that after Cruz forcibly entered her home and she struck him with a bat, he refused to leave the property, instead circling her residence and peering through her kitchen window while she was on the phone with 911. He also gestured in a manner that Fisher interpreted to mean that he would kill her. This evidence established multiple, separate acts forming a course of conduct. **See Leach**, 729 A.2d at 611.

Finally, for possession of drug paraphernalia, Cruz maintains that the Commonwealth failed to prove he possessed the items with the intent to use them for a prohibited purpose. Cruz notes that the police did not test the items for drug residue, he made no statements regarding their use, and the Commonwealth offered no expert testimony. Cruz argues that the conviction rested solely on speculation and Officer Kreitz's unqualified opinion testimony.

The offense of possession of drug paraphernalia requires the possession with intent to use "drug paraphernalia for the purpose of . . . ingesting, inhaling, or otherwise introducing" a controlled substance into the human body. 35 P.S. § 780-113(a)(32). The Controlled Substance, Drug, Device and Cosmetic Act[6] broadly defines "drug paraphernalia" to include "all

_____

[6] **See** 35 P.S. §§ 780-101 to 780-144.

equipment, products and materials of any kind which are used [or] intended for use" to, *inter alia*, ingest or inhale a controlled substance. 35 P.S. § 780-102. This definition explicitly includes objects designed for ingesting or inhaling marijuana and containers used for packaging small quantities of controlled substances. **See** 35 P.S. § 780-102; **see also Coleman**, 984 A.2d at 1002 (affirming that items used for "storing, containing, [and] concealing" controlled substances constitute drug paraphernalia).

Here, the trial court reasoned:

> [Cruz] argues that there was insufficient evidence to support a guilty verdict for possession of drug paraphernalia because there was no evidence that [Cruz] had the requisite intent to use the materials for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the body a controlled substance. Officer [] Kreitz testified that when he was inside [Cruz]'s residence, he recognized different articles of drug paraphernalia in plain view and seized those items. Those items were introduced into evidence and presented to the jury in which Officer Kreitz identified one item as a marijuana smoking pipe, one item as homemade marijuana smoking device, a pushrod, and tin foil used for purposes of ingesting or inhaling a controlled substance. This evidence satisfies the statutory elements of possession of drug paraphernalia. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to sustain Cruz's convictions for defiant trespass, stalking, harassment, and possession of drug paraphernalia.

Trial Court Opinion, 5/9/25, at unnumbered 3-4 (unnecessary capitalization and citations omitted).

After review, we determine the evidence was sufficient to support the possession of drug paraphernalia conviction. **See Coleman**, 984 A.2d at 1000-01. Officer Kreitz testified that, in plain view, he observed a store-bought smoking device, a homemade foil pipe, several small baggies with white residue, and torn pieces of foil — items he recognized as drug paraphernalia based on his extensive training and experience in over 500 drug investigations. The jury could reasonably infer Cruz possessed the items with intent to use them for controlled substances. **See Coleman**, 984 A.2d at 1001. Thus, Cruz's sufficiency claims fail.

In his final issue, Cruz contends, for the first time, that the trial court erred in failing to merge his stalking and harassment convictions for sentencing. He maintains that both convictions arose from a single criminal act and harassment is a lesser-included offense of stalking. A claim that offenses should merge for sentencing purposes implicates the legality of a sentence and is non-waivable, and an appellant may raise it for the first time on appeal. **See** 42 Pa.C.S.A. § 9781(a); **see also Commonwealth v. Martinez**, 153 A.3d 1025, 1030 & n.2 (Pa. Super. 2016). Accordingly, this Court has jurisdiction to review the claim.

Crimes merge for sentencing if two requirements are satisfied: first, "the crimes arise from a single criminal act," and second, "all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. Analysis of the second requirement "begins

and ends with the statutory elements of each offense." ***Commonwealth v. Edwards***, 256 A.3d 1130, 1137 (Pa. 2021). "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S.A. § 9765. This Court has long recognized that harassment is a lesser included offense of stalking because "one can harass without stalking, but one cannot stalk without also harassing." ***Commonwealth v. Reese***, 725 A.2d 190, 192 (Pa. Super. 1999); ***see also Leach***, 729 A.2d at 611 (stating that harassment is a lesser-included offense of stalking, as "the same conduct which amounts to harassment, 'if committed repeatedly with the intent to place the victim in fear of bodily injury or cause substantial emotional distress would rise to the level of stalking'").

The Commonwealth agrees that Cruz's stalking and harassment convictions should have merged because they arose from a single criminal act.[7] However, it contends that no remand is required because merging the sentences does not alter the overall sentencing scheme. We agree.

Harassment is a lesser-included offense of stalking, and the sentences must merge. ***See Reese***, 725 A.2d at 192. Thus, we vacate the one-year probationary sentence for harassment. We note that the trial court imposed this sentence to run concurrently with the one-year probationary terms for stalking, defiant trespass, and loitering and prowling at night time, and

_____

[7] The trial court did not address this issue as Cruz did not raise it until appeal.

imposed court costs for possession of drug paraphernalia. Accordingly, our disposition does not disturb the overall sentencing scheme. ***See Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) (explaining remand is unnecessary where vacatur of one count does not affect overall sentencing scheme). Accordingly, we affirm the conviction of harassment but vacate the corresponding the judgment of sentence.

Judgment of sentence vacated for harassment only and affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2025